Myrna B. **LAMB**, Plaintiff, Appellant,

v.

Talbot **RANTOUL** et al., Defendants, Appellees.

No. 77–1128.

United States Court of Appeals, First Circuit.

Heard June 1, 1977.

Decided Aug. 24, 1977.

Edward E. Dillon, Jr., Providence, R. I., with whom Harold H. Winsten and Feiner & Winsten, Providence, R. I., were on brief, for plaintiff, appellant.

Richard A. Sherman, Providence, R. I., with whom Peter J. McGinn and Tillinghast, Collins & Graham, Providence, R. I., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, LAY *, Circuit Judge, CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

Plaintiff brought suit against the Rhode Island School of Design (RISD), seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and injunctive relief and damages under 42 U.S.C. § 1983. After extensive discovery on the "state action" issue, the court granted defendant's motion to dismiss the § 1983

Cir. 1977). In none of these, however, was the issue specifically considered.

* Of the Eighth Circuit, sitting by designation.

claim for lack of state action and permitted an interlocutory appeal under Rule 54(b).

In brief, the state of Rhode Island and RISD have the following relationships. A modest amount of direct financial assistance, generally approximating one percent of RISD's annual operating budget, is received from the state. In 1974–75, RISD received the largest amount of direct assistance, $90,090, its total income being $7,700,089. Of this a small amount ($15,681) was given for state scholarships; a similar amount was allocated to museum tours for schools, which RISD gives under contract with the state; and the largest amount ($50,000) was given for the museum. The most substantial financial advantage lies in RISD's exemption from property and sales taxes, which all educational and charitable institutions enjoy. The extent of formal structural connections between RISD and the state is the requirement that five of RISD's 43 directors be state and Providence officials, designated ex officio, and the obligation to file annual reports and to allow inspections by the state. Finally, there is considerable cooperation between state officials and RISD personnel in preparing grant applications and projects serving various sectors of the Rhode Island citizenry.**

This case seems to us largely controlled by *Berrios v. Inter American University,* 535 F.2d 1330 (1st Cir. 1976). Our holding there that higher education was not a public function in the sense relevant to state action analysis applies even more forcibly to the combined art-related missions of RISD. In *Berrios,* although the University received not only tax exemptions but a much larger proportion of its budget from the state than does RISD, and was subject to accreditation regulation and oversight of disciplinary procedures by a public body, we held, citing prevailing authority, that the university was not a state actor. *See also Krohn v. Harvard Law School,* 552 F.2d 21 (1st Cir. 1977).

** We have excluded from our account RISD's activity in seeking, receiving, and implementing federal grants. While state officials assist

The additional factors present here are of two types: those arguably pointing to the "symbiotic" relationship mentioned in *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), and the fact that this is a sex discrimination case. The former include the 1948 conveyance by the city of Providence of a building to RISD and RISD's granting the state an easement in other property for historical purposes; the by-law provision we have noted requiring ex officio board members; the statutory requirement of an annual report and visitation rights in the state department of education; the assistance of the Rhode Island Historical Preservation Commission in including some of RISD's buildings on the National Register of Historic Places and in obtaining a federal grant for developing some of its property; the receipt of federal funds channeled through the Rhode Island State Council on the Arts, which has its offices in one of RISD's buildings.

Our inquiry must be, as the Court put it in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." In *Jackson* an electricity customer sought damages for the utility's termination of service. As the Court summarized the case,

"All of petitioner's arguments taken together show no more than that Metropolitan was a heavily regulated, privately owned utility, enjoying at least a partial monopoly . . . and that it elected to terminate service to petitioner in a manner which the Pennsylvania Public Utility Commission found permissible under state law." *Id.* at 358, 95 S.Ct. at 457.

The Court held that this did not make the utility's conduct attributable to the state. There is even less basis in the present case for finding any connection between the

RISD's efforts in this direction, the basic relationship is federal—beyond the purview of § 1983.

state and the action of RISD in refusing tenure to appellant.

There remains only appellant's argument, citing *Weise v. Syracuse University,* 522 F.2d 397 (2d Cir. 1975), that we should apply a different and less rigorous concept of state action, in view of the special offensiveness of such a class-based discrimination as that resting on sex. We confess to having qualms about taking such an initiative which would treat universities and other such institutions as state actors if a claim was based on sex discrimination, but, if not, as private institutions. We need not make this decision, for the two factors that gave the *Weise* court pause point in this case toward a holding of no state action. The dependence of RISD on state aid is miniscule and there is no suggestion of the state's intrusion into hiring decisions. *Cf. id.* at 407.

*The judgment is affirmed.*