**D. C. FEDERATION OF CIVIC ASSOCIATIONS, Citizens Association of Georgetown, Committee of 100 on the Federal City, Arlington Coalition on Transportation, Donald H. Shannon, Helen Levitt, Elizabeth Sneeden, Appellants,**

v.

**Brock ADAMS, Secretary of Transportation, Commonwealth of Virginia, the Board of Supervisors of Fairfax County, Virginia, the Fairfax County Chamber of Commerce, Virginia Citizens for I–66, Arlington Chamber of Commerce, Citizens for I–66, The City of Manassas, Appellees.**

**D. C. FEDERATION OF CIVIC ASSOCIATIONS, Citizens Association of Georgetown, Committee of 100 on the Federal City, Arlington Coalition on Transportation, Donald H. Shannon, Helen Levitt, Elizabeth Sneeden, Appellees,**

v.

**Brock ADAMS, Secretary of Transportation, et al., Defendants,**

**and**

**Commonwealth of Virginia, Appellant.**

**Nos. 77–2060 and 77–2076.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1977.

Decided March 14, 1978.

Walter A. McFarlane, Deputy Atty. Gen., Richmond, Va. (Anthony F. Troy, Atty. Gen. of Virginia, John J. Beall, Jr., Frederick M. Bruner, Debra J. Prillaman, Valentine W. Southall, Jr., Asst. Attys. Gen., Richmond, Va., Robert F. Flinn, Asst. County Atty. for Fairfax, Fairfax, Va., Robert W. Bendall, Smith & Davenport, Manassas, Va., John J. Sabourin, Jr., Hazel, Bechhorn & Hanes, Fairfax, Va., Charles Henry Smith, Tolbert, Smith, Fitzgerald & Ramsey, Arlington, Va., on brief); Carl Strass, Atty., Dept. of Justice, Washington, D. C. (Sanford Sagalkin, Deputy Asst. Atty. Gen., Raymond N. Zagone, Irwin L. Schroeder, Geoffrey A. Mueller, Attys., Dept. of Justice, Washington, D. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, BUTZNER, Circuit Judge, and FIELD, Senior Circuit Judge

HAYNSWORTH, Chief Judge:

The proposal to build Interstate–66, in particular, the segment running from the Capital Beltway to a connection with the Theodore Roosevelt Bridge, has spawned substantial controversy and litigation. This court enjoined construction of one I–66 proposal in 1972 because the Secretary of Transportation had not complied with the applicable environmental protection statutes.[1] Since that time, the proposals for building I–66 have been modified substantially in response to the changing transportation plans and needs of the Northern Virginia-Washington, D. C. area[2] and the criticisms of the Secretary of Transportation.[3]

Gary D. Wilson, Washington, D. C. (William T. Lake, William J. Kolasky, Jr., Christopher R. Lipsett, Bruce Maximov, Wilmer, Cutler & Pickering, Washington, D. C., Yvonne F. Weight, Alexandria, Va., Lawrence E. Smith, Courts Oulahan, Washington, D. C., Patrick A. Parenteau, Arlington, Va., Lawrence J. Latto, Washington, D. C., on brief), for appellants.

1. *Arlington Coalition on Transportation v. Volpe,* 458 F.2d 1323 (4th Cir.), *cert. denied,* 409 U.S. 1000, 93 S.Ct. 312, 34 L.Ed.2d 261 (1972). The district court dissolved that injunction in *Arlington Coalition on Transportation v. Volpe,* No. 59–71–A (E.D.Va., filed Feb. 14, 1977), after determining that the Secretary had corrected the statutory deficiencies of the I–66 proposal at issue in that case. That decision of the district court is not challenged in this appeal.

2. Initially, the governments planned to build an I–266 connection with I–66 and a new Three Sisters Bridge over the Potomac. Both plans have been abandoned. In addition, the Washington Metropolitan Area Transit Authority adopted a plan in 1968 for constructing a part of the Metro rail transportation system, known as the Metro K line, in the median of the proposed segment of I–66 between the Capital Beltway and Glebe Road.

3. The Federal Highway Administration (FHWA), in conjunction with the Virginia Department of Highways and Transportation and an independent transportation consultant, completed an Environmental Impact Statement in July 1974 for the I–66 proposal enjoined previously in *Arlington Coalition, supra.* A Supplemental EIS was prepared when the FHWA requested that I–66 consist of only six lanes, instead of eight. Secretary of Transportation

A new citizen's group was formed to oppose the most recent incarnation of I–66, and it initiated this round of litigation.

The district court found that the Secretary of Transportation had complied with all of the applicable environmental protection statutes in approving the final I–66 proposal. We affirm that holding, for substantially the same reasons as were given by the district court. The context in which several of the plaintiffs' arguments are advanced, however, justifies an explanation of the basis of our decision.

The plaintiffs' major argument on appeal is that the Secretary of Transportation failed to comply with the procedural requirements of Section 102(2)(C) of the National Environmental Policy Act, 42 U.S.C.A. § 4332(2)(C), Section 109 of the Federal-Aid Highway Act, 23 U.S.C.A. § 109, Section 4(f) of the Department of Transportation Act, 49 U.S.C.A. § 1653(f), and Section 138 of the Federal-Aid Highway Act, 23 U.S.C.A. § 138.

■ The first, and most important, defect alleged by the plaintiffs is that while the Secretary approved the final I–66 proposal because of the virtues of the combination of I–66 and the Metro K line, the Environmental Impact Statement failed to discuss the possibility that the Metro K line would never be constructed between Vienna, Virginia and Glebe Road. We think the EIS and the Secretary adequately considered the possibility suggested by the plaintiffs, given the reasonableness of that possibility at the time of the decisions and statements by the agencies involved.

The district court found that the Supplemental EIS did mention the possibility that buses would operate in the I–66 median, rather than the Metro K line. This fact implicitly indicates some consideration of the possibility that the Metro K line would not be completed, even though all planners believed then that the Metro K line would be built as planned. Only after the Final Supplemental Environmental Impact Statement was filed on August 10, 1976, did the events listed by the plaintiffs create any doubt about the future of the Metro K line. Although the Federal Highway Administration (FHWA) could have modified the EIS in light of these developments before approving the EIS on December 20, 1976, the FHWA was aware of those developments and legitimately could have concluded that the possibility that the Metro K line would be abandoned, as opposed to merely delayed, was not sufficiently likely, or reasonable, to merit further discussion in the EIS. Secretary Coleman's decision approving the I–66 proposal, after the FHWA approved the EIS, indicates that he, too, was very aware of the developments that threatened the completion of the Metro K line. Yet the Secretary's decision also clearly indicates that he believed the Metro K line would be completed, even if later than originally planned, and the Secretary approved the I–66 proposal on the basis of that belief.[4]

The consideration given to the possibility that the Metro K line would not be completed between Vienna and Glebe Road satisfies the purposes of NEPA's procedural requirement. An EIS must discuss reasonable alternatives and issues in order to inform the public and to guarantee that the planners consider relevant alternatives and issues before such substantial inertia develops that a proposal cannot be rejected or reevaluated. The record in this case demonstrates that both the public and the planners knew of

Coleman, however, disapproved the request to build the six-lane I–66 proposal in August 1975.

The Virginia officials devised a new I–66 proposal after Secretary Coleman's disapproval, consisting of a partially restricted four-lane highway with space for the Metro K line to be built in the median from the Capital Beltway to Glebe Road. The FHWA approved a Draft Supplemental EIS for this proposal on June 1, 1976, filed the Final Supplemental EIS on Au-

gust 10, 1976, and approved the Final Supplemental EIS (with an addendum) on December 20, 1976. Secretary Coleman issued a 71-page decision on January 5, 1977 approving the four-lane I–66 proposal, subject to several conditions.

4. See Secretary's Decision on Interstate Highway 66, Fairfax and Arlington Counties, Virginia at 7, 11, 23 (Jan. 5, 1977).

and considered the questions concerning the future of Metro, as those questions developed. NEPA did not require the Secretary of Transportation to delay approving I–66 until the Transit Authority finally resolved the questions about the Metro K line,[5] especially when the proposal approved by Secretary Coleman was intended to facilitate construction of the rail line in issue. At some point, construction plans must become final. In this case, the plans were all but final when the possibility complained of first developed. Given the defendants' consideration and treatment of that possibility, and the fact that even the plaintiffs do not contend that the approval of the EIS or the I–66 proposal were "arbitrary and capricious," we conclude that the EIS here satisfied the procedural requirements of the environmental protection statutes.[6]

The plaintiffs also allege that the EIS is procedurally deficient in another respect, because the EIS failed to discuss in sufficient detail four alternatives that the plaintiffs consider to be reasonable substitutes for the I–66 proposal. To the extent that these alternatives were reasonable means for obtaining the benefits of the I–66 proposal, we conclude that the EIS discussed those alternatives in sufficient detail. *See Coalition for Responsible Regional Development v. Coleman,* 555 F.2d 398 (4th Cir. 1977); *Fayetteville Area Chamber of Commerce v. Volpe,* 515 F.2d 1021 (4th Cir. 1975), *cert. denied,* 423 U.S. 912, 96 S.Ct. 216, 46 L.Ed.2d 140 (1976).

The third procedural defect alleged by the plaintiffs is the reliance in the EIS on projections that the plaintiffs contend are arbitrary and biased. The district court

found that the projections of carpool formation were prepared by experts in the field of traffic forecasting, using accepted methodologies. The plaintiffs' own witnesses admitted that they could not provide more reliable projections of carpool formation. Blind reliance on the projections of the impact of I–66 on the use of the Metro K line would have been less defensible, but better data for these projections were not available, and the FHWA addendum to the EIS and Secretary Coleman adequately considered the problems with these projections. Under these circumstances, we conclude that the EIS provided an adequate record for the concerned planners to make an informed decision.[7]

In addition to the procedural arguments based on the aforementioned statutes, the plaintiffs contend that Secretary Coleman did not comply with the National Historic Preservation Act (NHPA), 16 U.S.C.A. § 470f, and the implementing regulations of the Advisory Council on Historic Preservation. While we do not condone what may be a failure to adhere literally to the Advisory Council's regulations,[8] we do conclude that any possible deviation from the proper procedures, under the circumstances of this case, did not justify injunctive relief.

The NHPA obligated the Secretary to "take into account the effect" of the I–66 proposal on properties included in the National Register.[9] The Advisory Council's regulations procedurally require the Secretary to "identify properties located within the area of the undertaking's potential environmental impact" that are included in

5. *See Carolina Environmental Study Group v. United States,* 166 U.S.App.D.C. 416, 510 F.2d 796 (1975).

6. To the extent that any of the plaintiffs' arguments on appeal could be construed as challenges to the Secretary's substantive decision, we note our agreement with the district court's finding that the Secretary's decision was within the scope of his authority and neither arbitrary nor capricious.

7. *See Life of the Land v. Brinegar,* 485 F.2d 460 (9th Cir. 1973), *cert. denied,* 416 U.S. 961, 94

S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Movement Against Destruction v. Trainor,* 400 F.Supp. 533, 554 (D.Md.1975).

8. The facts of this case do not require us to interpret the Advisory Council's regulations, 36 C.F.R. § 800.1 *et seq.,* nor to decide whether the Secretary obeyed those regulations literally.

9. 16 U.S.C.A. § 470f. The Secretary also was required to allow the Advisory Council an opportunity to comment on the I–66 proposal.

the National Register and then to consult with the State Historic Preservation Officer to determine whether the undertaking will, in fact, have an impact upon the identified properties.[10]

The Secretary contended from the outset that I–66 would have no impact on historic properties in the District of Columbia and decided to "identify" only properties located in Virginia. Even if historic District properties potentially would have been affected, as the plaintiffs contend, the district court found that the I–66 proposal would not adversely affect these properties. And notwithstanding the decision not to "identify" historic properties in the District, the Secretary did furnish a copy of the new EIS to the Advisory Council and invite comments about the impact of I–66 on historic properties in the District. Because the Secretary did comply with the statute itself, and his substantive conclusion was upheld by the district court, and the experts on historic properties did have an opportunity to comment, we affirm the district court's decision not to grant relief on this claim.[11]

 Finally, the plaintiffs contend that Secretary Coleman based his decision to approve the I–66 proposal on considerations extraneous to the merits of the highway proposal. The plaintiffs rely upon *D. C. Federation of Civic Associations v. Volpe,* 148 U.S.App.D.C. 207, 221–225, 459 F.2d 1231, 1245–49 (1971), *cert. denied,* 405 U.S. 1030, 95 S.Ct. 1290, 31 L.Ed.2d 489 (1972), but that reliance is misplaced. The record indicates that Secretary Coleman based his decision upon the virtues of, and in furtherance of, an integrated transportation system that would include I–66 and the Metro K line, as the relevant statutes authorized him to do. The record does not support the plaintiffs' characterization of the basis for the Secretary's decision, as the district court's opinion makes clear. Thus, this case does not involve the same type of improper and extraneous consideration that was present in the decision to approve the Three Sisters Bridge.

The remainder of the plaintiffs' arguments were discussed sufficiently in the district court's opinion and need not be discussed again here.

We agree with the district court's resolution of the plaintiffs' challenges to the decision to approve I–66. The judgment is affirmed.

*AFFIRMED.*

---

10. 36 C.F.R. §§ 800.4(a)–(b).

11. *Ely v. Velde,* 451 F.2d 1130 (4th Cir. 1971), does not control the issue in this case, because

the defendants in *Ely* had not complied in any respect with the NHPA.