VIEUX CARRE PROPERTY OWNERS,
RESIDENTS & ASSOCIATES, INC.,
Plaintiffs–Appellants,

v.

Colonel Lloyd Kent BROWN, etc., et
al., Defendants–Appellees.

No. 87–3854.

United States Court of Appeals,
Fifth Circuit.

June 14, 1989.

Oliver A. Houck, New Orleans, La., for amicus curiae Louisiana Council.

James R. Logan, IV, James G. Derbes, Derbes, Waldrup & Thompson, New Orleans, La., for Vieux Carre Property Owners, Residents & Associates, Inc.

Patricia B. Rittiner, Covington, La., pro se.

John H. Beisner, Elizabeth S. Merritt, Nat. Trust for Historic Preservation, David A. Doheny, Rebecca K. Troth, Washington, D.C., for amicus curiae Nat. Trust.

Richard J. McGinity, New Orleans, La., for Bd. of Com'rs of New Orleans Levee Dist.

Elizabeth Ann Peterson, Martin W. Matzen, Justice Dept., Washington, D.C., for Col. Brown.

Charles M. Lanier, Sheila T. Walet, New Orleans, La., for Bd. of Com'rs.

Henry W. Kinney, III, John W. Ellinghausen, Kinney & Marshall, New Orleans, La., for Audobon Park Com'rs.

Mark Gallinghouse, Asst. U.S. Atty., New Orleans, La., for Col. Lloyd Kent Brown.

Phillip A. Wittmann, Steven W. Usdin, Okla Jones, II, Eleanor K. Roemer, New Orleans, La., for Audobon Park Com'rs and City of New Orleans.

Before POLITZ, GARWOOD, and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

This dispute focuses the Court's attention on a private plaintiff's enforcement of the National Historic Preservation Act (NHPA) against the United States Army Corps of Engineers (the Corps). Vieux Carre Property Owners, Residents & Associates, Inc. (the Vieux Carre), the plaintiffs-appellants in this case, is made up of land-

owners within the Vieux Carre National Historic Landmark District—popularly referred to as the French Quarter—on the Mississippi River in New Orleans, Louisiana. The Vieux Carre ultimately seeks to arrest the construction of an aquarium and riverfront park currently being erected on and just landward of the Bienville Street Wharf at the foot of Bienville Street. This appeal comes from the district court's summary dismissal of the Vieux Carre's suit on jurisdictional grounds.

The Vieux Carre first claims that the Rivers and Harbors Act, 33 U.S.C. § 403(RHA) and the Corps' regulations found in 33 C.F.R. §§ 320 through 330 (1987), require the Corps to issue a permit for the aquarium phase of the project, and that such permitting in turn requires the Corps to submit the project to the NHPA historic impact review process dictated by 16 U.S.C. §§ 470f and 470h–2(f). The Vieux Carre then claims that the park phase required an individual permit, but that even if it complied with the Corps' nationwide permit that itself triggered section 470f and required the Corps to follow the historic impact review procedures detailed in 36 C.F.R. §§ 800 *et seq.* The Corps failed to submit any of the project to the NHPA review process. Thus, the Vieux Carre sued for a declaratory judgment against the Corps and an injunction against those developing or otherwise authorizing the project, namely, the Audubon Park Commission, the City of New Orleans, the Board of Commissioners of the Port of New Orleans, and the Board of Commissioners of the Orleans Levee District. We find that the dismissal of the Vieux Carre's aquarium phase claim was proper, though for different reasons than those stated by the district court. We reverse the court's dismissal of the Vieux Carre's riverfront park claim against the Corps and remand for further legal and factual findings in relation to that claim. We affirm the court's dismissal of the Vieux Carre's request to enjoin the other appellees from proceeding with the project.

### Facts and Proceedings Below

In July 1986, the Louisiana Legislature authorized the Audubon Park Commission—a local governmental entity then in charge of operating a New Orleans park and zoo—to acquire riverfront property for a world-class aquarium and riverfront park. As authorized by this legislation, in November 1986, an election was held in which New Orleans voters approved a millage tax necessary to fund bonds for construction of the project. No federal funds will be involved. Following local governmental approvals—including those by the City of New Orleans' Vieux Carre Commission, the New Orleans City Planning Commission, and the New Orleans City Council—of the proposed site at the foot of Bienville Street, in April 1987, the Audubon Park Commission submitted tentative plans to the Corps to determine whether permitting would be required. The plans describe the project in two phases: Phase A involves construction of the aquarium just landward of and overlapping slightly onto the Bienville Street Wharf; Phase B shows a park on top of the wharf, reserving the riverward face of the wharf for continued maritime use.

Near its landward edge, the Bienville Street Wharf sits atop a three-sided box levee that runs alongside the Mississippi River. The riverward vertical of the levee currently serves as the Ordinary High Water Line (OHWL) of the river, and as such is the Corps' benchmark for determining its jurisdiction under the RHA. This riverward vertical of the levee consists of a concrete and steel bulkhead. In order to achieve a desirable factor of safety against embankment failure, the foundation piles of the aquarium must be augmented by a new bulkhead, consisting of piles and sheet pile, installed just landward of the existing bulkhead. The new bulkhead admittedly will achieve the desired factor of safety. Though the existing bulkhead will be undisturbed, it appears that the primary available post-construction bulkhead support will be attributable to the new bulkhead.

The second, riverfront park phase of the project calls for removal of large metal sheds atop the wharf and the placement of sod, trees, and benches.

After reviewing the plans, the Corps concluded in May 1987 that its regulations did not require a permit for the aquarium because the entire project is to be built landward of the OHWL. Thus, the project is not within the navigable waterways of the United States and is therefore outside the Corps' RHA jurisdiction. The Corps found that the park, which will be located atop the wharf completely riverward of the OHWL and therefore indisputably within the Corps' jurisdiction, is already within a nationwide Corps permit promulgated under the RHA. It falls within this permit, the Corps asserts, because the plan submitted for review does not involve modifications that would change the dimensions of the wharf and because the riverward edge of the wharf would still be dedicated to maritime use.

The Corps informed the Audubon Park Commission of its conclusions by letter dated May 14, 1987. The Corps did not submit the project to the NHPA review process. The Vieux Carre filed this suit on August 6, 1987. Following an evidentiary hearing, the district court dismissed the suit, finding that the Vieux Carre had no direct right of action under the RHA, sections 10 and 14, 33 U.S.C. §§ 403, 408, to compel the Corps to require permitting, and that the Administrative Procedure Act (APA) does not provide for federal court review of these specific Corps decisions because they are committed to the Corps' discretion. 5 U.S.C. § 701(a)(2). As of May 1988, the plans for the aquarium had been finalized and the foundation had been poured.

We affirm the district court's dismissal of the Vieux Carre's requested injunction, finding that neither the APA nor the NHPA give a private plaintiff a right of action against any of the defendants other than the Corps. We reverse the district court on both of its findings as they pertain to the Vieux Carre's claims against the Corps, but we approve the Corps' determination that the aquarium phase of the project did not require a permit. We remand to the district court to determine whether the riverside park in fact falls within the claimed nationwide Corps permit, and, if so, whether, *inter alia*, the nationwide permitting of the park triggers the NHPA procedures.

*Jurisdiction*

▇ The Vieux Carre correctly notes that this Circuit in *Orleans Audubon Society v. Lee*, 742 F.2d 901, *reh'g denied*, 750 F.2d 69 (5th Cir.1984), identified the APA as a route through which private plaintiffs can obtain federal court review of the decisions of federal agencies.[1] As noted in *Lee*, this route also provides the Vieux Carre something of a way around the Supreme Court's decision in *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981), which held that according to the criteria announced in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), a private party has no implied right of action for violations of the RHA. *Lee*, 742 F.2d at 911, n. 18. We fail to understand, however, how APA-dictated reviewability of the Corps' decisions allegedly violating the RHA gives the district court jurisdiction to enjoin such nonfederal entities as the Audubon Park Commission.

The Vieux Carre has cited a recent Tenth Circuit case that allows plaintiffs to do approximately what the Vieux Carre attempts to do here. In *Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir.1988), the court

---

1. The district court, however found that it did not have jurisdiction under the APA because the Corps' decisions at issue are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The courts have applied this APA reviewability exception primarily to situations in which agencies have chosen not to enforce or prosecute violations of their regulations, rather than to agency decisions on whether or not to approve activities governed by a statute that sets guidelines for determining when such approval should and should not be given. *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). Thus, because the NHPA, the RHA, and relevant Corps regulations dictate the circumstances in which the Corps is required to issue the permits in question here, we assume that the Corps' decision not to permit the aquarium or park is not immune from judicial review under section 701(a)(2). This case is distinguishable from *Harmon Cove Condominium Ass'n, Inc. v. Marsh*, 815 F.2d 949 (3d Cir. 1987), in which the court refused to review the Corps' decision not to *enforce the conditions* of a previously issued RHA dredging permit.

ruled that it could review federal agency action—of the Bureau of Land Management (BLM)—through the APA, and that it would simultaneously enjoin the county from proceeding with a road improvement project that the private plaintiff claimed endangered a wilderness study area. The court noted that by its terms the APA does not authorize suits against nonagency defendants who benefit from an agency's violation of a statute; therefore, the plaintiff apparently lacked a right of action against the county. Still, the court allowed the injunction, reasoning that the county was a necessary party under Fed.R.Civ.P. 19(a) because the BLM was bound by statute to take any action required to protect wilderness study areas, and this would include impleading the county in order to enjoin it.[2]

■ As applied against the nonfederal appellees in *this* case, *Hodel*'s reasoning is faulty for at least three reasons. First, such a holding obviously negates the Supreme Court's decision in *Sierra Club*. As long as the private plaintiff joined the federal agency in the action, the former could reach a nonagency defendant even without having a cause of action against that party. Second, unlike the situation in *Hodel* as to the BLM, no statute requires the Corps to enforce the RHA provision the Vieux Carre claims was violated here. In fact, 33 U.S.C. § 406 explicitly vests that authority in the Attorney General. So, the Corps had no duty to implead or enjoin the Audubon Park Commission or the other nonfederal defendants, and a right of action against them cannot be manufactured in this way.

Finally, it is implicit in Rule 19(a) itself that before a party will be joined as a plaintiff it must have a cause of action against the defendants, *McNeil Construction Co. v. Livingston State Bank*, 160 F.Supp. 809, 813 (D.Mont.1957), and before

it will be joined as a defendant the plaintiff must have a cause of action against it. *See Dunn v. Carey*, 110 F.R.D. 439, 440 (S.D. Ind.1986) (citing to the language in Rule 19(a) that a party will not be joined if joinder deprives the court of subject matter jurisdiction), *aff'd on other grounds*, 808 F.2d 555 (7th Cir.1986); *Melanson v. Rantoul*, 421 F.Supp. 492, 501 (D.R.I.1976), *aff'd on other grounds*, 561 F.2d 409 (1st Cir.1977).

In addition to *Hodel*, pre-*Sierra Club* Fifth Circuit cases discuss a private party's right to enjoin a nonagency defendant for an alleged violation of the RHA provision at issue here. In *Tatum v. Blackstock*, 319 F.2d 397, 399–400 (5th Cir.1963), the Court allowed such an injunction under the authority of a 1928 Fifth Circuit case and a partial quotation from 33 U.S.C. § 406 (omitting the delegation of enforcement to the Attorney General). In a later opinion, this Circuit limited those cases to their facts: building a dam over a navigable waterway without first obtaining the consent of Congress or the approval of the Corps. *Intracoastal Transportation, Inc. v. Decatur County*, 482 F.2d 361, 366 n. 14 (5th Cir. 1973). Regardless, these cases are substantially overruled by *Sierra Club*. We also observe that the Third Circuit, simply purporting to follow *Sierra Club* without discussing access through the APA, recently found that a private plaintiff has no right to enjoin or sue a nonagency defendant for damages under the RHA. *Harmon Cove Condominium Ass'n v. Marsh*, 815 F.2d 949, 953 (3d Cir.1987).

It would not help the Vieux Carre to argue that the Corps violated the NHPA in addition to the RHA. Although courts have allowed private plaintiffs to enjoin nonagency defendants where agencies have not complied with the NHPA, these opin-

---

**2.** The *Hodel* court relied in part on *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914 (9th Cir.1977), which allowed injunction of private developers by way of Fed.R.Civ.P. 20(a) permissive joinder. Noting that Rule 20(a) requires that the plaintiff must assert a right of relief against each defendant, the Ninth Circuit found that a local governmental entity's violation of an interstate compact by granting illegal construction ap-

provals to developers makes those approvals invalid and gives a "right of relief against the developers to prohibit any construction on their projects." 558 F.2d at 917. Without approving or disapproving this holding, we conclude that such a private right of action does not arise against nonfederal developers when a federal agency violates the RHA. Any other conclusion, we believe, would be too at odds with *Sierra Club*.

ions do not explain how the right of action against the nonagency defendant arises. *See, e.g., Morris County Trust for Historic Preservation v. Pierce,* 714 F.2d 271 (3d Cir.1983); *cf. D. C. Federation of Civic Associations v. Adams,* 571 F.2d 1310 (4th Cir.1978) (indicating that it would be willing to enjoin nonagency actions if it were not ruling that the agency had in fact complied with the NHPA). Rather than through APA review, a private right of action against an agency arises under 16 U.S.C. § 470w–4, which provides for the NHPA to be enforced "in any civil action brought in any U.S. District Court by any interested person." *See United States v. 162.20 Acres of Land, More or Less,* 639 F.2d 299, 305, *reh'g denied,* 644 F.2d 34 (5th Cir.), *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981). Courts that have considered the issue have explicitly ruled that this claim does not extend to actions against nonagency defendants. *See, e.g., Edwards v. First Bank of Dundee,* 534 F.2d 1242, 1245 (7th Cir.1976); *Ely v. Velde,* 451 F.2d 1130 (4th Cir.1971). By its terms, only a federal agency can violate section 470f.

The Vieux Carre has no federal claim against appellees other than the Corps.

*Standing Against the Corps*

The APA, 5 U.S.C. § 702, grants federal court standing to any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." The Supreme Court has interpreted this to require that the interest the plaintiff seeks to protect or advance in his complaint "is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). This Court generally applies this zone of interests test for standing. *See, e.g., Baker v. Bell,* 630 F.2d 1046, 1051 (5th Cir.1980).

It is perhaps arguable that if the Vieux Carre sought review of the Corps' actions as they relate only to the RHA, it would not have APA standing because appellant's concern is historic preservation rather than the navigability of the Mississippi River.[3] We need not and do not decide that issue. Even if the Vieux Carre is not within the RHA's zone of interests, however, it may have standing if the NHPA is one of the "relevant statutes" implicated by the Corps' complained of inaction. The D.C. Circuit, in *Committee for Auto Responsibility v. Solomon,* 603 F.2d 992, 997 (D.C. Cir.1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 599 (1980), noted that the Supreme Court has defined a section 702 "relevant statute" as a statute plaintiff alleges was violated. The *Solomon* court ruled that the National Environmental Policy Act (NEPA) was the statute allegedly violated where the parties did not dispute that an action of the General Services Administration had triggered the NEPA requirement to prepare an environmental impact statement.

Similarly, in its complaint, the Vieux Carre alleges the Corps' violations of the NHPA undiluted by any claimed prerequisite violations of the RHA, asserting that the Corps violated 16 U.S.C. § 470f because "the Corps' review of preliminary plans and reservation of final approval for this project constitute the requisite federal assistance to compel application of the NHPA," and because it did not submit the park phase to the section 470f process when it determined that the project fell under the nationwide permit created by 33

---

**3.** We note, however, that regulations promulgated by the Corps to effectuate the RHA make a "public interest review" part of its permitting process. 33 C.F.R. § 320.4(a). This "general balancing process" includes a consideration of a proposed project's cumulative effects on historic properties. And section 320.4(e) states that "[f]ull evaluation of the general public interest requires that due consideration be given to the effect which the proposed structure or activity may have on values such as those associated with wild and scenic rivers, historic properties and National Landmarks,...." The Vieux Carre could argue, then, that its concerns are within the zone of interests sought to be protected by the RHA. *Cf. Citizens Committee for Hudson Valley v. Volpe,* 425 F.2d 97 (2d Cir.), *cert. denied,* 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970) (similar provision under the Department of Transportation Act).

C.F.R. 330.5(a)(3). The Vieux Carre also asserts that the Corps violated its own regulation, 33 C.F.R. 330.5(b)(9), which directs it to evaluate the historic impact of certain projects that fall under nationwide permits. The Vieux Carre is arguably within the zone of interests sought to be protected by both the NHPA and this particular Corps regulation. *Cf. United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 2415 n. 13, 37 L.Ed.2d 254 (1973) ("zone-of-interests" test satisfied because environmental group plaintiffs have an environmental interest that the NEPA seeks to protect); *Cady v. Morton*, 527 F.2d 786, 791 (9th Cir.1975) (an interest in widely shared aesthetic and environmental concerns falls within the zone of interests to be protected by NEPA); *Citizens Committee for Hudson Valley v. Volpe*, 425 F.2d 97, 105 (2d Cir.), *cert. denied* 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970).

■ We therefore hold that the Vieux Carre's historic preservation concerns are arguably within the zone of interests Congress sought to protect through the interrelation of the various statutes and regulations that the Vieux Carre has claimed were violated in this action. The Second Circuit made a similar finding in *Volpe*, in which it ruled that a resident citizens' committee had standing to challenge the Corps' issuance, without prior approval of the Secretary of Transportation or consent from Congress, of a permit to the State of New York to dredge and fill the Hudson River for construction of a proposed expressway. The *Volpe* court found that the plaintiffs were aggrieved within the meaning of at least three relevant statutes. *Id.* at 104. First, because part of the project was a causeway, the Corps should have secured consent for the project from the Secretary of Transportation as required by the Department of Transportation Act. Plaintiff's environmental interests were within the zone of interests sought to be protected by this statute because the Act required the Secretary to consider historical values before approving a project under its jurisdiction. The *Volpe* court also found other, more directly relevant statutes that provided those plaintiffs with standing. These

included the Hudson River Basin Compact Act, which instructed all agencies to consider the immense economic, natural, scenic, historic, and recreational value of Hudson River Basin resources before approving activities affecting the area. Finally, the court found that the plaintiffs had standing under the Corps' own regulations, which directed it to evaluate factors such as environmental effects before issuing such permits. *Id.* at 105.

In summary, although the Vieux Carre cannot enjoin the Audubon Park Commission's project, it has standing to assert its claim for a declaratory judgment against the Corps.

*Consideration of Aquarium Plans*

The Vieux Carre argues that the Corps' May 14, 1987 response to inquiries about necessary permits for the Audubon Park project triggered the historical impact evaluation procedures of the NHPA, 16 U.S.C. § 470f, in four different ways: through the Corps' continuing supervision over the aquarium phase of the project even if no license was required; through the allegedly erroneous determination that no license was necessary for the aquarium despite the requirements of the RHA; because an individual license should have been issued for the park phase; and, even if no new license were necessary, by its determination that the park fell under a nationwide permit. The proper interpretation of section 470f is therefore relevant to all four assertions.

This provision of the NHPA provides:

*"The head of any Federal agency* having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking *shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license,* as the case may be, *take into account* the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal

agency *shall afford the Advisory Council* on Historic Preservation established under sections 470i to 470v of this title *a reasonable opportunity to comment* with regard to such undertaking." (Emphasis added.)

■ In effect, the Vieux Carre claims that the Corps' reserved final approval of plans for the aquarium phase constitutes indirect jurisdiction requiring the Corps to subject the project to the requirements of section 470f. We disagree. This is simply too attenuated.

Regardless of the projects arguably included in the first clause of the first sentence of section 470f, the second clause thereof makes it clear that the agency need not act unless it is about to approve an expenditure of federal funds or issue a license. The scant legislative history verifies this understanding of the scope of section 470f: "The committee agreed that Federal agencies having direct or indirect jurisdiction over various undertakings, either through Federal funding or through their licensing powers, should recognize these [preservation] values." H.R. No. 1916, *reprinted in* 1966 U.S.Code Cong. & Admin. News, 3307, 3310. Although no cases have been found that interpret section 470f federal assistance as broadly as the Vieux Carre proposes, at least one gives it a very restrictive meaning. *See Ringsred v. Duluth,* 828 F.2d 1305, 1309 (8th Cir.1987), (equating section 470f federal assistance with the explicit triggering requirement for action under the NEPA—"major federal undertaking").

We conclude that section 470f is not triggered by either the Corps' instructions for the project developers to submit final plans of the aquarium phase, or by its surveillance of the project to ensure that no permits become necessary. Significantly, circuit courts have ruled that federal environmental protection statutes do not enlarge the Corps' jurisdiction. *See, e.g., Riverside Irrigation Dist. v. Andrews,* 758 F.2d 508, 512 (10th Cir.1985) (stating that the Endangered Species Act does not enlarge the jurisdiction of the Corps under the Clean Water Act); *United States v. Stoeco*

*Home, Inc.,* 498 F.2d 597, 607 (3d Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975) (such statutes do not enlarge the Corps' jurisdiction under the RHA).

*Permitting the Aquarium*

The parties do not dispute that an RHA section 10 permit is a "license" under section 470f. *See* 36 C.F.R. §§ 800.1(c)(2)(ii) and 800.2(*o*) (1987). They do dispute whether the Corps was required to issue a section 10 permit for the aquarium phase. That section provides in relevant part:

"The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier ... breakwater, bulkhead, jetty, or other structures in any port, ... navigable river, or other water of the United States ... except on plans recommended by the Chief of Engineers...." 33 U.S.C. § 403.

Before looking at the regulations and case law on the scope of the Corps' jurisdiction under the RHA, we must determine the applicable standard for our review of an agency's jurisdictional determination. The APA, 5 U.S.C. § 706(2), allows courts to set aside agency actions, findings, and conclusions found to be:

"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

"(B) contrary to constitutional right, power, privilege, or immunity;

"(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

"(D) without observance of procedure required by law;

"(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

"(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

The Supreme Court interpreted this statute in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 822–25, 28 L.Ed.2d 136 (1971), stating that review under the substantial evidence test is proper *only* when agency action is taken pursuant to a rulemaking provision of the APA itself, or when it is based on a public adjudicatory hearing. *Id.* 91 S.Ct. at 822–23. The Corps' action in this case falls into neither of these categories.

This Circuit, in *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir.1983), considered its standard of reviewing an agency's alleged failure to exercise its permitting jurisdiction as extensively as it should have. We held that under the APA's section 706 and *Volpe*, we could overturn an agency's determination of the *extent* of its jurisdiction only when the agency determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; that is, when the agency failed to consider relevant factors or made an error in judgment. *Id.* at 905.[4] One year after *Avoyelles*, this Circuit applied the section 706(2)(A) arbitrary and capricious standard of review to an agency's determination that it had no RHA-permitting jurisdiction. *Lee*, 742 F.2d at 907 n. 11 (citing to *Avoyelles* and section 706(2)(A–D)). Thus, the *Lee* Court carried *Avoyelles* one step further—applying the section 706(2)(A) arbitrary and capricious standard of review to pure jurisdictional determinations.

Thus, this Court must decide whether the Corps' determination that it had no permitting authority over the aquarium was arbitrary and capricious in light of RHA section 10 and the cases and regulations that define the scope of the Corps' RHA section 10 jurisdiction. *See* 33 C.F.R. §§ 320–330. Section 322.3(a) requires the Corps to issue permits under section 10 for "structures and/or work in or affecting navigable wa-

ters of the United States," but then states that certain activities are permitted instead by 33 C.F.R. § 330 as nationwide permits. "Navigable waters of the United States" is defined in 33 C.F.R. § 329. Section 322.-3(a) provides that structures and work must be permitted if they are in such waters, or "affect the course, location, or condition of the waterbody in such a manner as to impact on its navigable capacity."

The general definition of navigable waters is found in 33 C.F.R. § 329.4:

> "Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce. A determination of navigability, once made, applies laterally over the entire surface of the waterbody, and is not extinguished by later actions or events which impede or destroy navigable capacity."

Section 329.11(a)(1) specifically identifies the boundaries of navigable waters in rivers and lakes as "all the land and waters below the ordinary high water mark," which

> "on non-tidal rivers is the line on the shore established by the fluctuations of water and indicated by physical characteristics such as a clear, natural line impressed on the bank; shelving; changes in the character of soil; destruction of terrestrial vegetation; the presence of litter and debris; or other appropriate means that consider the characteristics of the surrounding areas."

Finally, section 329.3 states that precise definitions of "navigable waters of the United States" are dependent on judicial interpretation. Although no Fifth Circuit cases specifically approve section 329.11(a),

---

**4.** However, the *Avoyelles* opinion distinguishes situations in which "the court must determine whether the property falls under the agency's jurisdiction at all before it may determine whether the exercise of the agency's jurisdiction is appropriate," *id.* at 906, citing as support *Federal Power Commission v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 96 S.Ct. 579,

582, 46 L.Ed.2d 533 (1976), which, citing *Volpe*, used the substantial evidence test to review the sufficiency of the factual predicate necessary for the agency's exercise of its jurisdiction. The Natural Gas Act, however, rather than the APA, provided the *Transcontinental* Court with jurisdiction to review the Federal Power Commission's action.

other courts have explicitly approved the regulation as the proper limit of the Corps' RHA section 10 jurisdiction, *see, e.g., Swanson v. United States,* 789 F.2d 1368, 1371 (9th Cir.1986); *Buttrey v. United States,* 573 F.Supp. 283, 297–98 (E.D.La. 1983), and the regulation comports with the Supreme Court's determination that federal regulatory power under the commerce clause "extends to the entire stream and the stream bed below ordinary high-water mark." *United States v. Rands,* 389 U.S. 121, 88 S.Ct. 265, 267, 19 L.Ed.2d 329 (1967).

The Corps determined that the aquarium phase of the Audubon Park project was "beyond the ordinary high water line of the Mississippi River, *i.e.,* all construction is landward of the box levee." Because the Vieux Carre does not challenge the Corps' treatment of this marker as the OHWL at the Bienville Street Wharf, and because the Vieux Carre stipulated that the foundation of the aquarium will be entirely landward of the existing levee, the second clause of RHA section 10 does not require permitting of the aquarium. We must therefore determine whether the Corps' implicit conclusion that the aquarium project will not *affect* navigable capacity in waters of the United States—that is, will not create an "obstruction" under the first clause of RHA section 10—is arbitrary and capricious.

The Supreme Court has encouraged a broad interpretation of a section 10 "obstruction," ruling that it includes not only activities causing a measurable fluctuation in the water level, but also clogging of the channel with deposits of inorganic solids. *United States v. Republic Steel Corp.,* 362 U.S. 482, 80 S.Ct. 884, 889, 4 L.Ed.2d 903 (1960). This Circuit has held that canal dredging activities shoreward of the mean high tide line may constitute an obstruction to navigable capacity. *United States v. Sexton Cove Estates, Inc.,* 526 F.2d 1293, 1298–99 (5th Cir.1976) (citing *United States v. Perma Paving Co.,* 332 F.2d 754 (2d Cir.1964), which found an obstruction where defendant had overloaded his riparian land and thereby caused shoaling in a navigable channel).

The Vieux Carre asserts that two different aspects of the aquarium project will obstruct navigability in the Mississippi River: the circulation of water between the river and the aquarium and the possible failure of the bank at the box levee caused by construction of the aquarium. As to the first claimed "obstruction," the Corps points out that project plans submitted to the Corps after its initial determination that a permit was not required contemplate an internal water flow system that will not circulate river water. The Vieux Carre cites no authority that such circulation would constitute an obstruction to navigable capacity even if it were still planned.

The Vieux Carre's second claimed "obstruction" has more arguable substance. The administrative record shows that, prior to its initial determination that a permit was not required, the Corps was aware that the bank stability at the Bienville Street Wharf was about 1.0 or 1.1, though the Corps' own standards for flood protection call for a 1.3 stability factor. The Corps' correspondence states, however, that the floodwall (which is in place at the Bienville Street Wharf landward of the aquarium site) was built seventy feet further landward than otherwise necessary in order to compensate for low bank stability. Consequently, the Corps had no objection to the project.

Correspondence in the administrative record indicates that this low bank stability is a preexisting condition. Thus, it is difficult to say that the *aquarium* constitutes an obstruction to navigable capacity. However, the Vieux Carre points out that in a letter dated May 19, 1987 (two days after the Corps' initial determination that a permit was not required), a Corps official in its operations division stated that "[i]t is noted that the plans call for the addition of fill material to the bank landward of the existing box levee. This will further lower the safety factor of the existing bank." A similar statement is found in an internal memorandum from an official in the Corps' engineering division.

Assuming that the administrative record shows unequivocally that the aquarium construction will to some extent decrease the stability of the existing box levee, or that most of the available post-construction bulkhead bank support will be attributable to the new bulkhead landward of the existing levee, this does not require the conclusion that the project will obstruct navigable capacity. This is true even if we further assume that the possible dangers that the record suggests could conceivably at some later time cause an effect on the riverward side of the existing box levee—such as if a bank failure toppled the wharf (much of which is concededly riverward of the box levee) into the river.[5]

The RHA's first section 10 clause, which the Vieux Carre argues mandates a Corps permit for the aquarium, states that a party may not create an obstruction to the navigable capacity of any waters of the United States. The Corps' regulations interpret this statute as requiring a Corps permit for activities that "affect" navigable waters—those that "affect the course, location, or condition of the waterbody in such a manner as to impact on its navigable capacity." 33 C.F.R. § 322.3(a). The imprecise statutory language of section 10 leaves the Corps with quasi-legal authority to determine what "effects" constitute "obstructions" or "impacts" to navigable capacity. *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985) ("[a]n agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress"); *American Trucking Associations, Inc. v. I.C.C.*, 722 F.2d 1243, 1248 (5th Cir.1984) ("[e]ven if an agency's interpretation would not be the one we would adopt if looking at a statute completely afresh, we ordinarily accept that agency's interpretation of its

own statute if the interpretation 'has a reasonable basis in law' "). We find that it is reasonable for the Corps to determine that the possibility of minor or inconsequential effects within the OHWL does not impact or obstruct navigable capacity within the meaning of section 10.

■ It appears that based on such an understanding of "impact" or "obstruction," the Corps here made a jurisdictional determination that the aquarium construction's mere possible future effects in navigable waters were neither sufficiently likely nor severe enough to make the aquarium's construction—occurring entirely on land—an impact on or obstruction of navigable capacity within the meaning of section 10. We conclude that this decision is neither arbitrary, capricious, an abuse of discretion, nor otherwise contrary to law.

■ Finally, the Vieux Carre claims that the Corps' failure to exercise its permitting jurisdiction over the aquarium flew in the face of the 33 C.F.R. § 320.4 public interest review policies already discussed. In short, the Vieux Carre claims that because of the adverse impact on a historic district, the Corps' failure to permit was arbitrary and capricious. This argument is unpersuasive. Even if such an adverse impact was obvious, this public interest review regulation is clearly intended as a prerequisite to a decision to permit an activity within the Corps' jurisdiction, rather than a factor in the decision on whether jurisdiction exists at all.

*Permitting the Riverside Park*

■ The Corps admits that the park phase of the project comes under a nationwide permit, but maintains that such a permit is not subject to the historical impact review procedures of 16 U.S.C. §§ 470f and 470h–2(f).[6] The Vieux Carre

**5.** A May 22, 1987 letter from a Corps official to the Orleans Levee District states that "a bank failure could cause significant damage to the existing wharf, box levee, and facilities landward of the wharf,...."

**6.** The Vieux Carre has asserted that all of the challenged Corps decisions trigger the NHPA's

section 470h–2(f) in addition to section 470f. Section 470h–2(f) states:

"Prior to the approval of any Federal undertaking which may directly and adversely affect any National Historic Landmark, the head of the responsible Federal agency shall, to the maximum extent possible, undertake such planning and actions as may be neces-

contends that (1) the park is not permitted by a nationwide permit and therefore requires an individual permit; (2) if a nationwide permit covers the park, making an individual permit unnecessary, that nationwide permit is a "license" triggering section 470f's historic impact review procedures.

The original Bienville Street Wharf, permitted by the Corps in 1930, could itself come within only one nationwide permit, that under the provisions of 33 C.F.R. § 330.3(b) for "[s]tructures or work completed before December 18, 1968, or in waterbodies over which the district engineer had not asserted jurisdiction at the time the activity occurred provided, in both instances, there is no interference with navigation." The Corps stipulated that the reconstruction of the wharf pursuant to the 1930 permit affected the navigability of the Mississippi River. Thus, the original wharf structure does not fall under a nationwide permit.

That does not mean, however, that the park phase cannot fall under such a permit. Section 330.5(a)(3) grants nationwide permits for:

> "The repair, rehabilitation, or replacement of any previously authorized, currently serviceable, structure or fill, or of any currently serviceable structure or fill constructed prior to the requirement for authorization, provided such repair, rehabilitation, or replacement does not result in a deviation from the plans of the original structure or fill, and further provided that the structure or fill has not been put to uses differing from uses specified for it in any permit authorizing its original construction. Minor deviations due to changes in materials or construction techniques and which are necessary to make repair, rehabilitation, or replacement are permitted."

This nationwide permit is subject to the section 330.5(b)(9) requirement that the district engineer give the advisory council an opportunity to comment if he determines that historic properties may be adversely affected by the repair, rehabilitation, or replacement.

If the riverfront park does not fit within this section 330.5(a)(3) nationwide permit, it must be individually permitted because its location riverward of the box levee—the OHWL—places it within the navigable waters of the United States and the Corps' jurisdiction under the second clause of RHA section 10. If an individual permit is necessary, the NHPA section 470f historic impact review procedures would concededly be triggered. Before discussing whether the park falls within the section 330.5(a)(3) permit, however, we address the relationship between nationwide permits and section 470f.

The Vieux Carre asserts that even if we find that the park project is covered by the section 330.5(a)(3) nationwide permit, "a permit is a permit," and nothing in the wording of section 470f indicates that some federal agency licensing is exempt from its requirements. The Corps' regulations in fact state that permits are either "in the form of individual permits or general permits." 33 C.F.R. § 325.5(a). A "nationwide permit" is simply "a type of general permit." *See* 33 C.F.R. §§ 325.5(c)(2) and 330.1.

Interpreting the Clean Water Act (CWA), similar in relevant part to the NHPA, the Tenth Circuit, in *Andrews*, 758 F.2d at 512–13, held that by allowing a party to proceed under a nationwide permit the Corps had triggered provisions of the CWA requiring agencies to issue environmental impact statements. In so holding, the court distinguished the CWA from the NEPA, which explicitly states that it is triggered by "major federal actions." As noted above, however, the Eighth Circuit recently approved the parties' treatment of the NHPA's section 470f "undertaking" requirement as "coterminous" with the NEPA's "major Federal actions" triggering event. *Ringsred,* 828 F.2d at 1309; *cf. Lee,* 742

---

sary to minimize harm to such landmark, and shall afford the Advisory Council on Historic Preservation a reasonable opportunity to comment on the undertaking."

Because we find that this section is inapplicable when a federal agency no more than issues a license or permit, we will not address this provision again.

F.2d at 901 (referring throughout to activities falling under a nationwide permit as "exempt" from permitting requirements).

The Tenth Circuit's *Andrews* interpretation, if adopted for the NHPA, reflects the NHPA's statutory purpose, which contemplates widespread agency responsibility for the protection of historic interests. *See, e.g.,* 16 U.S.C. § 470(b)(4); H.R.Rep. No. 1916, 89th Cong., 2d Sess. 7, *reprinted in* 1966 U.S.Code Cong. & Admin.News 3307, 3309. It is also true to the NHPA statutory language itself.

Section 330.5(b)'s incorporation of an accelerated historic review procedure as a precondition to a project falling under a section 330.5(a)(3) nationwide permit does not seem to help the Corps' case. In addition to the fact that the Corps concedes that it did not evaluate the historic impact of either phase of the project, we note that through correspondence the Advisory Council has warned the Corps that section 330.5(b)(9) does not satisfy section 470f requirements. Indeed, regulations promulgated under the NHPA provide for counterpart regulations only under specific circumstances:

"In consultation with the Council, agencies may develop counterpart regulations to carry out the section 106 process. When concurred in by the Council, such counterpart regulations shall stand in place of these regulations for the purposes of the agency's compliance with section 106." 36 C.F.R. § 800.15 (1987).

The Corps' position that nationwide permits do not trigger section 470f, however, has great practical appeal, especially in relation to the nationwide permit described in 33 C.F.R. § 330.5(a)(3), which unquestionably covers such activities as repainting and reroofing original structures. Congress clearly did not intend to require the Corps to subject such truly inconsequential projects to the procedural complexities of section 470f. *See* National Historic Preservation Act Amendments of 1980, H.R. No. 96–1457, 1980 U.S.Code Cong. & Admin. News 6378, 6408; *cf. 162.20 Acres of Land,* 639 F.2d at 302 n. 3. Such a literal construction of section 470f is unreasonable and

unintended, and as such is a result we must endeavor to avoid. *See, e.g., United States v. Mendoza,* 565 F.2d 1285, 1288, *on reh'g,* 581 F.2d 89 (5th Cir.1978) (citing "the celebrated" *Rector of Holy Trinity Church v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892), as the seminal case approving judicial avoidance of absurd but literal statutory constructions). Moreover, the applicability of section 470f should not be at the whim of the Corps' subsequent "permit" label; such labeling does not alter congressional intent.

■ And, as pointed out by the Corps, the nationwide permits of 33 C.F.R. § 330 are specifically designed to expedite activities with inconsequential effects on the RHA concerns. *See* 33 C.F.R. § 330.1 (stating that nationwide permits "are designed to allow certain activities to occur with little, if any, delay or paperwork"). Indeed, "[t]he purpose of the nationwide permit system is to allow certain types of [activities to go forward] without prior Corps approval." *Lee,* 742 F.2d at 909; *see also Andrews,* 758 F.2d at 511. Consequently, 33 C.F.R. § 330.1 notes that some of its chapter's nationwide permits require notification to the district engineer prior to commencement of the activity in question. Presumably, these are the more significant projects—those more likely to have measurable impacts on navigation. We hold that nationwide permits authorizing truly inconsequential activities are not triggering "licenses" under section 470f.

■ We now turn to whether section 330.5(a)(3) authorizes such inconsequential activities, for we find that the regulation's failure to require notification by the "permittee" to the Corps is not dispositive of the issue. This nationwide permit has not previously been interpreted by a federal court in a published opinion. The Corps apparently determined that the park constitutes a "rehabilitation" or "replacement" of the wharf, that the park plans do not deviate from the 1930 plans of the wharf except for minor deviations due to changes in materials or construction techniques that are necessary for the rehabilitation or replacement, and that the park is not a use

differing from uses specified in the 1930 wharf permit. The reviewing court must determine whether the Corps' interpretation of its own regulation is reasonable and consistent with the regulations themselves. *Lyng v. Payne,* 476 U.S. 926, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986). Because the district court did not address this issue, we remand for an interpretation of the scope of section 330.5(a)(3); a determination of whether the Corps' finding that the riverfront park is covered by this nationwide permit (as the district court defines it) was arbitrary or capricious; and if the park is covered by section 330.5(a)(3), a ruling on whether the project is so inconsequential that it escapes section 470f's historic impact review requirements.

Finally, if the district court finds that the riverfront park does fall under section 330.-5(a)(3) and is inconsequential, it must also address the Vieux Carre's argument that this nationwide permit is invalid because the Corps did not evaluate the park's impact on historic properties as is required by the Corps' own regulation—section 330.-5(b)(9). The Audubon Park Commission notified the Corps (so as to apparently trigger that regulation) when it submitted plans for the project and asked whether permits would be necessary.

### Conclusion

Because we find that the Vieux Carre has no private right of action under the RHA, and that the APA grants judicial review only of federal agency actions, we affirm the district court's dismissal of the Vieux Carre's claims against all defendants except the Corps. We further hold that the Corps' determination that the aquarium phase of the project was outside its RHA section 10 permitting jurisdiction reflects a reasonable interpretation of the statute and an evaluation of these specific facts that is neither arbitrary nor capricious. Finally, we remand to the district court for a ruling on whether the park phase falls within the nationwide permit in 33 C.F.R. § 330.5(a)(3). If the district court determines that the Corps' interpretation of this nationwide permit regulation, or its finding that the park is within the regulation, is

arbitrary and capricious, the project must be individually permitted because it is within the Corps' RHA jurisdiction, and thus is subject to section 470f review. If, however, the district court sustains the Corps' determination that the park phase does fall within this nationwide permit regulation, the court is to go on to determine whether the project is so inconsequential that it nevertheless escapes the historic preservation review requirements of NHPA section 470f; and if it does thus escape section 470f, the district court must address section 330.5(b)(9).

Accordingly, the judgment of the district court is AFFIRMED in part and REVERSED in part, and the cause is REMANDED for further proceedings consistent herewith.