**HAYNE BLVD. CAMPS PRESERVATION ASSOCIATION, INC., et al.,**

v.

**Colonel Thomas JULICH, in his official capacity as District Engineer, U.S. Corps of Engineers, New Orleans District, et al.**

**No. Civ.A. 01–1411.**

United States District Court, E.D. Louisiana.

June 8, 2001.

**630**

George Hugh Penn, George H. Penn, Attorney at Law, Michael Stephen Rolland, Law Offices of Michael S. Rolland, New Orleans, LA, for plaintiffs.

Fred Turner Hinrichs, U.S. Attorney's Office, New Orleans, LA, for Thomas F. Julich and Federal Emergency Management Agency.

Gerard George Metzger, Gerard G. Metzger, Attorney at Law, New Orleans, LA, Frank Anthony Milanese, Frank Anthony Milanese, PLC, New Orleans, LA, for Orleans Levee District.

Gary L. Keyser, Attorney General's Office, Baton Rouge, LA, for Louisiana Department of Transportation and Development.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is plaintiffs' supplemental motion for a preliminary injunction. For the reasons that follow, the motion is denied.

### Background

In September 1998, Hurricane Georges ferociously struck the Gulf Coast, causing high winds and water levels on the south shore of Lake Pontchartrain in New Orleans. At the time the storm hit, there were approximately 70 camps built on pilings out into the Lake between Lakefront Airport and Paris Road.[1] Although all 70 camps received some damage in the hurricane, 64 of the camps were severely damaged, leaving the structures in the main destroyed, except for their support pilings.

At the request of Governor Foster, and pursuant to section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, President Clinton declared the area a disaster area, making the State eligible to receive federal assistance. The Federal Emergency Management Agency (FEMA) is authorized to administer and coordinate the federal government's response to major disasters under the Stafford Act.

To receive a federal grant for the cleanup of the storm debris, the State of Louisiana, though the Division of Administration and on behalf of the Department of Transportation and Development (DOTD), and the Orleans Levee District (OLD) entered into a Cooperative Endeavor Agreement, whereby OLD was obligated to act as local sponsor for the cleanup of the debris and the removal of the piers and pilings of the 64 destroyed camps left by the hurricane

---

1. The camps were built on the water bottoms of the Lake, which is owned by the State of Louisiana. The State did not lease the property to the camp owners, nor did it otherwise give them permission to build the camps on its property.

(the Debris Removal Project). Shortly thereafter, the State and OLD applied for a FEMA grant for the Debris Removal Project. In March 2000, FEMA obligated federal disaster assistance funds for the Project.

In November 2000, OLD applied to the U.S. Army Corps of Engineers (Corps) for a wetlands permit to undertake the work on navigable waters. After a notice and comment period, Colonel Thomas Julich, in his official capacity as District Engineer of the New Orleans District of the Corps, approved the application for the Debris Removal Project on March 22, 2001. In connection with the permit process, the Corps issued an environmental assessment and a finding of no significant impact. The Debris Removal Project was then advertised for bid by OLD.

Charging a host of procedural violations of the National Historic Preservation Act (NHPA) and the National Environmental Protection Act (NEPA) by FEMA and the Corps, and seeking judicial review of these agency actions under the Administrative Procedure Act (APA), the plaintiffs, Hayne Blvd. Camps Preservation Association, Inc., John Bowes, and John L. Schackai, III filed this lawsuit on May 9, 2001. The Association is an organization of individuals who own camps in the area affected by the Debris Removal Project. Plaintiffs John Bowes and John Schackai are owners of camps: Mr. Bowes owns a partial interest in the "Dixie Sunset" Camp, which is slated for removal in the Debris Removal Project, as well as a partial interest in the "Wayne the Painter" Camp, which is not designated for removal; Mr. Schackai owns a partial interest in "Camp Lu-Laine," which is subject to removal in the Debris Removal Project. The plaintiffs seek injunctive and declaratory relief from

the defendants, Colonel Thomas Julich as District Engineer, U.S. Army Corps of Engineers, New Orleans District, and Joe Allbaugh, as Director of FEMA (collectively, the federal defendants), as well as OLD and DOTD, both agencies of the State of Louisiana (collectively, the state defendants).

Because the plaintiffs anticipated that the contract for the Debris Removal Project would be awarded by OLD on May 9, 2001, the plaintiffs sought a temporary restraining order and preliminary injunction simultaneously with the filing of their complaint. After a hearing in chambers on the afternoon of May 9, 2001, the Court denied the plaintiffs' application without prejudice.

Thereafter, on May 16, 2001, OLD adopted a resolution conditionally awarding the contract for the Debris Removal Project, pending approval by the Planning, Engineering and Construction Committee at its meeting on June 5, 2001. On May 21, 2001, the plaintiffs filed this motion and sought an expedited hearing so that the matter would be resolved before the June 5 meeting. The Court granted an expedited hearing and set the motion for hearing on May 31, 2001. After reviewing the parties' briefs, the Court ordered additional briefing on the issue whether it possessed jurisdiction to enjoin the state defendants and continued the hearing on the motion. A hearing was held on June 7, 2001.[2]

## I. *Jurisdiction over the State Defendants*

In this case, the plaintiffs seek judicial review of the actions of FEMA and the Corps pursuant to the APA. The APA provides an avenue through which private plaintiffs can obtain federal court review of

---

2. This Court's review is limited to the completed administrative record. *Sierra Club v.*

*United States Fish & Wildlife Service,* 245 F.3d 434, 444 (5th Cir.2001).

the decisions of federal agencies. *Vieux Carre Property Owners, Residents, & Assocs., Inc. v. Brown,* 875 F.2d 453, 456 (5th Cir.1989). However, as the plaintiffs concede, it does not provide a route through which plaintiffs can obtain injunctive relief against nonfederal defendants. *Id.* at 456 ("We fail to understand, however, how APA-dictated reviewability of the Corps' decisions allegedly violating the [Rivers and Harbors Act] gives the district court jurisdiction to enjoin such nonfederal entities as the Audubon Park Commission."). Thus, while the APA indisputably provides for judicial review of the decisions of the Corps and FEMA, it does not provide a jurisdictional basis for this Court to enjoin nonfederal defendants, such as OLD and DOTD. *Id.* at 456–58.

Recognizing this jurisdictional deficiency, the plaintiffs urge the Court to exercise supplemental jurisdiction over the state defendants. The Court is unpersuaded. The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Inherent in the concept of supplemental jurisdiction is the overarching essential that there must be a nonfederal claim before the Court before it can exercise supplemental jurisdiction. Here, however, the plaintiffs have asserted no claim whatsoever against the state defendants, and as such, there is no claim over which this Court can exercise supplemental jurisdiction. The plaintiffs limply explain that they named state defendants in their lawsuit because of Federal Rule of Civil Procedure 19(a), maintaining that failure to join the state defendants would have impeded their ability to protect their interests. The Court finds this contention untenable; it is implicit in Rule 19(a) that a plaintiff must have a cause of action against a party before joining it as a defendant. *Vieux Carre Property Owners,* 875 F.2d at 457. Accordingly, the Court finds that exercising supplemental jurisdiction over the state defendants would be inappropriate. The state defendants are dismissed from the suit.

## II. *Standing*

The Court turns to the question of standing. Unquestionably, standing must be established before injunctive relief may be granted. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Preservation Coalition v. Federal Transit Admin.,* 129 F.Supp.2d 551, 561 (W.D.N.Y.2000). An association has standing to bring suit on behalf of its members when:

> (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*United Food & Commercial Workers v. Brown Group,* 517 U.S. 544, 553, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996); *Hunt v. Washington State Apple Advert. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The Court's standing inquiry as to all plaintiffs can be resolved under this three-pronged test because the test encompasses the question of the individual plaintiffs' standing as well as the Association's.

■ The plaintiffs have standing. The members of the Hayne Blvd. Camps Pres-

ervation Association would have standing to pursue their claims in their own right, because the individual plaintiffs' interests in this case—the preservation of the remains of their camps along Lake Pontchartrain—are specific and legally cognizable. Moreover, the defendants' actions could harm the plaintiffs' interests, and the plaintiffs' injury is judicially redressable. Moreover, the interests the Association seeks to protect are germane to the organization's purpose. The organization was created to preserve the environment of the lake and the "historic" camp properties (it seeks to protect what it claims are historic structures). Finally, participation of the individual members of the association is not required for the plaintiffs to obtain the injunctive and declaratory relief they have requested; the plaintiffs do not seek monetary damages, and this is not a case in which individual proof of injury is required. (Although, arguably, it should have been).

## III. *Injunctive Relief*

■ Injunctive relief obviously is "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Harris County, Texas v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir.1999) (internal quotations omitted). It is academic that a preliminary injunction may be granted only if the plaintiff can satisfy four elements: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is denied, (3) that the threatened injury outweighs any damage that the injunction might cause the defendants, and (4) that the injunction will not disserve the public interest. *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir.1999). Each of these elements is a mixed question of law and fact. *Harris County*, 177 F.3d at 312.

### A. *Likelihood of Success on the Merits*

■ The plaintiffs seek judicial review pursuant to the APA, and the Court considers the plaintiffs' likelihood of success on the merits guided by the standards of review provided for in the APA and case literature. In general, the APA instructs that a court shall set aside agency findings, conclusions, and actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that fail to meet statutory, procedural or constitutional requirements. 5 U.S.C. § 706(2)(A), (B), (C), (D). Thus, the Court's duty is to ensure that the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983). The Court may not "substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). And, the Court's review of final agency action is, as previously noted, limited to the administrative record. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Sierra Club v. United States Fish & Wildlife Serv.*, 245 F.3d 434, 444 (5th Cir.2001).

### 1. *NHPA*

Section 106 of the NHPA requires federal agencies to consider the effects of their actions on historic properties. 16 U.S.C. § 470f. Prior to the approval of the expenditure of any federal funds on the undertaking or prior to the issuance of any license, the head of any federal agency with jurisdiction over a proposed federally assisted undertaking and the head of any federal agency with authority to license any undertaking "shall take into account

the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register." *Id.*

### a. *FEMA's Violations of NHPA*

The plaintiffs contend that FEMA failed to undertake an independent section 106 review before approving the expenditure of federal funds, maintaining that all FEMA did was rubber stamp the State Historic Preservation Officer's determination as to the camps, instead of making its own independent determinations, as NHPA requires. The defendants counter that FEMA independently evaluated the contested debris in compliance with NHPA and concluded that the pilings were not eligible for inclusion in the National Register of Historic Places.

■ NHPA requires that "the determinations of effect, adverse effect, or no effect by the appropriate federal agency official be an independent one, and not simply a 'rubber stamp' of the state's work." *See Hall County Historical Society, Inc. v. Georgia Dep't of Transp.*, 447 F.Supp. 741, 751–52 (N.D.Ga.1978). The evidence before the Court indicates that FEMA relied solely on the State Historic Preservation Officer's review; there is no indication that it undertook an independent investigation of the historic and architectural qualities of the property affected by the Project. Thus, on the basis of the administrative record before the Court, the Court finds that the plaintiffs are likely to prove that FEMA's section 106 review fell short of NHPA requirements.

### b. *The Corps' Violations of NHPA*

The plaintiffs contend that the Corps erred in failing to include the New Orleans Historic District Landmarks Commission (NOHDLC) as a "consulting party" in its section 106 review. Applicable regulations provide that "[a] representative of a local government with jurisdiction over the area in which the effects of an undertaking may occur is entitled to participate as a consulting party." 36 C.F.R. § 800.2(c)(4). The record suggests, however, the Corps did consider the NOHDLC conclusions, but did not agree, and did indeed visit the site itself. (Administrative Record pp. 4, 129).

■ The Court is persuaded that the plaintiffs are correct about NOHDLC's jurisdiction. They have sufficiently demonstrated that the NOHDLC has jurisdiction over private property in the affected area. The Louisiana Supreme court has recognized the authority of a parish to regulate and even tax *private* property located in Lake Pontchartrain. In *United Gas Pipe Line Co. v. Moise*, 220 La. 969, 58 So.2d 197, 204 (1952), the Louisiana Supreme Court held that "the boundaries of the Parishes of St. Tammany and St. Charles extend to the middle of Lake Pontchartrain" and thus the parishes were entitled to tax the owners of a pipeline on the bed of the lake. The high court's holding in *State ex rel. Guste v. Board of Comm'rs. of the Orleans Levee Dist.*, 456 So.2d 605 (La.1984), that state agencies have no ownership interest in the beds and bottoms of the navigable waterways, is not helpful here; that case does not foreclose parish and city agencies from regulating private property located on State property. As it appears that the NOHDLC is "[a] representative of a local government with jurisdiction over the area," it was entitled to be a consulting party. But the record falls far short of establishing that the Corps ignored NOHDLC's opinions. To disagree is not to ignore.

## 2. *NEPA*

NEPA has twin aims: (1) it places upon an agency "the obligation to consider every significant aspect of the environmental im-

pact of a proposed action," and (2) it ensures that the agency "will inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 97, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983) (internal quotations omitted). NEPA requires agencies "to take a hard look at environmental consequences before taking a major action." *Id.* A court's role in reviewing agency compliance with NEPA is to ensure that the agency "has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious." *Id.* at 98, 103 S.Ct. 2246.

### a. *FEMA's Violations of NEPA*

The plaintiffs assert that FEMA failed to evaluate the environmental impact of the Project before approving the disbursement federal funds and thus did not discharge its obligations under NEPA. The defendants respond that FEMA was not required to comply with NEPA because the Stafford Act statutorily excludes debris removal from NEPA's requirements.

42 U.S.C. § 5159 provides that certain actions, including debris removal, taken pursuant to the Stafford Act are exempt from NEPA compliance:

> An action which is taken or assistance which is provided pursuant to section 5170a, 5170b, 5172, 5173, or 5192 of this title, including such assistance provided pursuant to the procedures provided for in section 5189 of this title, which has the effect of restoring a facility substantially to its condition prior to the disaster or emergency, shall not be deemed a major Federal action significantly affecting the quality of the human environment within the meaning of the National Environmental Policy Act of 1969.

42 U.S.C. § 5159. The plaintiffs maintain that the statute is inapplicable here be-

cause the Project does not constitute action that "has the effect of restoring a facility substantially to its condition prior to the disaster or emergency." However, FEMA rules state that actions taken or assistance provided under, for example, section 407 of the Stafford Act is exempt from NEPA compliance, without regard to whether the action "has the effect of restoring a facility substantially to its condition prior to the disaster or emergency." 44 C.F.R. § 10.8(c)(1). Therefore, under FEMA's interpretation of the statute, FEMA was not obligated to comply with NEPA in this case.

Generally, courts defer to an agency's interpretation of a statute it administers; in short, the view of the agency charged with administering a statute is entitled to considerable deference. *Chemical Mfrs. Ass'n v. Natural Res. Def. Council*, 470 U.S. 116, 125, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985). To sustain an agency's interpretation, a court need not find that it is the only permissible construction that the agency might have adopted but only that the agency's understanding of this statute is sufficiently rational. *Id.*

In this case, the plaintiffs have not demonstrated that FEMA's interpretation of 42 U.S.C. § 5159 is irrational. Accordingly, the Court finds that the plaintiffs have failed to establish that they are likely to prevail on this count.

### b. *The Corps' Violations of NEPA*

The plaintiffs complain that the environmental assessment the Corps prepared for NEPA purposes was inadequate for several reasons. First, they claim that the Corps did not evaluate the impact of the Project on the designated shrimp sanctuary that is over the area of the Project. The defendants claim that the Corps was unaware of any designated shrimp sanctu-

ary, and, in any event, the environmental assessment concluded that the impact to any ecosystem would be minor. Plaintiffs fail to point to evidence of record that the Corps knew of the shrimp sanctuary and did not consider the Project's ramifications on it.

■ The plaintiffs also maintain the Corps did not consider the adverse impact on significant cultural and historic resources including (a) the historic nature of the camps (including the existing pilings); (b) the effect the Project would have on the ability of camp owners to restore the camps; (c) the effect of the Project on the plaintiffs' ownership rights; (d) the designation by the NOHDLC that the properties, including the pilings, were a historic landmark; and (e) the "neighborhood" qualities of the Hayne Boulevard camps. In response, the defendants insist that the Corps (a) did consider whether there were any historic properties involved and found that removal of the pilings would have no effect on cultural resources in the area; (b) did consider the effect of the Project on the camp owners' ability to rebuild and found that, due to FEMA regulations, it was unlikely that the remaining pilings could be used if any camps were rebuilt and that removal of the pilings would not affect the ability to rebuild; (c) did not consider the effect of the Project on the plaintiffs' ownership rights because it was not an appropriate subject for an environmental assessment, the purpose of which is to determine the extent of environmental impacts of a project; (d) did consider the NOHDLC's opinion but concluded that, given the State Historic Preservation Officer's opinion, the pilings were not historically significant; and (e) did not specifically address the "neighborhood qualities" of the area but did address the impact that removal of the pilings would have on the remaining structures and concluded there

was no impact. For purposes of this motion, the plaintiffs have failed to convince the Court that the Corps did not comply with its obligation to consider the natural environment as well as the human environment. A review of the environmental assessment issued by the Corps indicates that it gave proper consideration to all rational environmental concerns.

Finally, the plaintiffs argue that the Corps did not examine or disclose reasonable alternatives or the environmental impacts of reasonable alternatives to the Project. However, a review of the environmental assessment indicates that the Corps did discuss the alternatives suggested by the plaintiffs and rejected them as unreasonable. The plaintiffs have not sufficiently demonstrated that the Corps' discussion of alternatives was inadequate. As such, the plaintiffs have failed to establish a substantial likelihood of success on the merits as to the Corps' compliance with NEPA.

### B. *The Key: Irreparable Injury*

The plaintiffs claim they will be irreparably harmed absent a preliminary injunction in two ways. First, they claim that historic mission of the plaintiff association will be forever lost, maintaining that if the Project goes forward, the structures and pilings will be destroyed and the six remaining camps will be forever altered. Next, they urge that the Project will jeopardize their rights under state law to obtain a lease from the State to rebuild on the state water bottoms. They claim that they have rights to apply for a lease under La.Rev.Stat. § 41:1222 if they can show that the camps were constructed in good faith prior to 1985; they state that if the pilings are destroyed, they will encounter difficulty proving that the camps existed prior to 1985, especially given their contention that the Division of State Lands requires lease applicants to show that there

are pre–1985 permanent improvements on state lands at the time of the lease application.[3] The plaintiffs assume that neither of these injuries may be compensated by monetary damages.

The Court finds that the plaintiffs have failed to establish a threat of irreparable injury if the Debris Removal Project goes forward. As to the plaintiffs' first argument, although the NOHDLC has classified the pilings as historically significant, the State Historic Preservation Officer does not. The State Historic Preservation Officer has written that removal of the pilings will not adversely affect cultural resources:

> As this project does not envision removal of extant camp structures, we do not believe that it will have a potential to have an adverse effect on cultural resources. The project does envision removal of groups of pilings in which the associated camp structure is no longer extant. Even so, we believe removal of house pilings also will have no adverse effect on cultural resources.

Letter from Gerri Hogbdy, Assistant Secretary of the State Historic Preservation Officer (Dec. 20, 2000). Given this conflict in the evidence, the NOHDLC's opinion is not in and of itself sufficient to demonstrate irreparable injury. And a choice of one opinion over another does not establish bad conduct.[4] The plaintiffs point to no record evidence that supports their claim of historical significance. Indeed, their argument that the pilings are historically significant is substantially undermined by the fact that they will seek to rebuild the destroyed camps. Even assuming that the plaintiffs succeed in get-

ting leases from the State, the plaintiffs will have to obtain a building permit from the City of New Orleans. To obtain a building permit from the City, the pilings will have to reach an elevation of +16 feet, and it undisputed that the existing pilings lack the requisite elevation. Thus, it appears that as part of a rebuilding project, the "historic" pilings would have to be removed to make way for new pilings.

The Court is equally unconvinced by the plaintiffs' argument that their ability to obtain a lease from the State will be jeopardized if the Project proceeds. It is unclear how removal of the pilings would prevent the plaintiffs from establishing that their camps had been built prior to 1985, as La.Rev.Stat. § 41:1222 requires. (It seems as though photographs and tax records, among other things, might constitute even better proof than creosote sticks in the ground.) Likewise, it is not clear how the continued presence of the pilings would help the plaintiffs establish that the camps were built pre–1985. The pedigree of the pilings seems elusive at best.

Finally, the Court notes that it is difficult to accept that the plaintiffs will suffer irreparable injury, given that the State could order removal of the remains of the camps at any time, even without regard to their historical significance, if no leases are granted. Civil Code article 458 provides that property built without permit on public things may be removed at the expense of the persons who built or owned them at the instance of public authorities. And even if the State lacked such authority and removed the pilings improperly, the plaintiffs could seek the cost of driving new

---

**3.** The Court draws attention to a significant point the plaintiffs concede: they have only a statutory right to apply for leases; they have no absolute right to obtain the leases and the State retains the authority to grant or deny.

**4.** Contrary to plaintiffs' assertions, the site was inspected and the concerns expressed by NOHDLC animated disagreement, not refusal to consider. (Administrative Record pp. 4, 129).

pilings from the State. Thus, in any event, the plaintiffs fail to show how they are irreparably injured by the Project.

## C. *Public Interest*

Finally, the plaintiffs contend that an injunction will not disserve the public interest because the public's interest lies in agency compliance with the laws and in preservation of architecturally, culturally, and historically significant properties. But the pilings and debris could well present a dangerous condition; the deteriorated pilings have the serious potential to become floating obstructions or flying projectiles, posing a threat to vessels on the waterway. In addition, an injunction could result in loss of federal cleanup funds allocated to the Project. Finally, the City has plans to reopen the Lake at the Lincoln Beach site (which is in the midst of the project area) to the public for swimming. Given these concerns, and the public's interest in unobstructed use of State waterways, the Court finds that the injunction has the potential to disserve the public interest.

## *Conclusion*

For the foregoing reasons, the plaintiffs' supplemental motion for preliminary injunction is DENIED. This case is DISMISSED.[5] All costs are taxed to plaintiffs.

---

5. The permanent injunction request is moot and likewise DISMISSED.