YANKTON SIOUX TRIBE, and its individual members, Plaintiffs,

v.

UNITED STATES ARMY CORPS OF ENGINEERS; Joe N. Ballard, Chief Engineer, Army Corps of Engineers; Tom Curran, Operations Manager, Army corps of Engineers Fort Randall Project; and John Doe, past Chief Engineer, Army Corps of Engineers, Defendants.

No. CIV.99–4228.

United States District Court,
D. South Dakota,
Southern Division.

March 21, 2002.

Mary Turgeon Wynne, Okanogan, WA, for Plaintiffs.

Bonnie P. Ulrich, U.S. Attorney's Office, Sioux Falls, SD, for Defendants.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

The defendants filed a Motion to Dismiss Complaint, or in the alternative, Motion for Summary Judgment, Doc. 53, relating to the original complaint in this action. The Court then granted the Yankton Sioux Tribe's (the "Tribe") request to file an amended complaint. The defendants filed a Motion to Dismiss Amended Complaint, Doc. 61. These motions have been fully briefed by the parties and they will be decided based upon the written record herein. The motions will be denied as to the Tribe's claims under the Native American Grave Protection and Repatriation Act ("NAGPRA"), codified at 25 U.S.C. § 3001, et seq. (2001), and will be granted as to the Tribe's claims under the National Historic Preservation Act ("NHPA"), codified at 16 U.S.C. § 470, et seq. (2000).

## BACKGROUND

The original complaint in this action, filed on December 23, 1999, alleged the defendants had violated and were continuing to violate the NAGPRA, because the defendants had inadvertently discovered Native American human remains but did not cease activities in the area as required by 25 U.S.C. § 3002(d)(1). The remains were discovered in December 1999 on the shore of Lake Francis Case (the "Lake"), which is that portion of the Missouri River behind the Fort Randall Dam in Charles Mix County, South Dakota. The Court previously found that the remains were those of Sioux Tribal members who were buried in the St. Philip's Cemetery[1] adjacent to the White Swan Church.[2] (See Memorandum Opinion and Order, Doc. 16, January 10, 2000.) In its original complaint, the Tribe requested that the Court issue a temporary restraining order, preliminary injunction and a permanent injunction prohibiting defendants from raising the water level in the Lake and providing the required written notice to the Tribe. The Court issued a temporary restraining order on December 23, 1999, prohibiting the defendants from raising the water level of the Lake higher than 1340.3 feet above sea level. (Doc. 7.) The temporary restraining order was in effect until the hearing scheduled on January 3, 2000.

The Court conducted a hearing on the Tribe's motion for a preliminary injunction on January 3–4, 2000. During the hearing,

---

1. The Tribe objected to the Corps' use of the description "St. Philip's Cemetery" in a letter dated July 11, 2000. (See Declaration of Sandra Barnum, Doc. 63, Exhibit 13.) The Tribe, however, has variously referred to the site as the "St. Philips Cemetery" (Doc. 66, p. 1), the "St. Philips Cemetery site" (Doc. 60, p. 1), the "White Swan Church site" (Doc. 56, ¶ 5), the "White Swan Church cemetery" (Doc. 56, ¶ 12), the "White Swan Church graveyard" (Doc. 56, ¶ 31), the "White Swan gravesites"

(Doc. 56, ¶ 41). To ensure clarity in this opinion, the Court will refer to the site where the human remains were discovered by the Corps in December 1999 as the "St. Philip's Cemetery."

2. A more detailed recitation of the facts in this action is contained in the Court's Memorandum Opinion and Order issuing a preliminary injunction. See Doc. 16, January 10, 2000.

the Tribe orally modified its request for relief to allow the Tribe time to remove the remains in accordance with its own traditions and wishes under the NAGPRA. The Tribe requested an injunction preventing the defendants from raising the water level until it had sufficient time to complete unspecified religious ceremonies, consult with anthropologists, decide what to do with the human remains, and remove the human remains from the Lake's shore. The temporary restraining order was continued until January 11, 2000. A written opinion was issued on January 10, 2000, prohibiting the defendants from raising the water level of the Lake higher than 1340 .3 feet above sea level until the latter of January 13, 2000, or when all of the loose human remains and any other loose cultural items were removed from the Lake's shore.

In a report to the Court, the parties stated that they agreed the human remains exposed in November 2000 would remain in place and be covered with a combination of filter fabric, soil and rocks. (*See* Report to the Court, Doc. 40, November 8, 2000.) The defendants preferred removal and repatriation of any and all human remains which could be identified at the site, but defendants acceded to the Tribe's wishes to cover the remains as a short term solution for the year 2000. (*Id.*) Due to severe weather and heavy snow, the parties were unable to implement their plan in December 2000. (*See* Report to the Court, Doc. 44, March 1, 2001.) As of March 2001, the parties informed the Court that they intended to implement their plan in the fall of 2001 when the water level again dropped. (*Id.*) This plan, of covering the remains with fabric, soil and rocks, is a temporary solution to the potential exposure of remains. The parties have also been negotiating to develop a plan for permanent site protection.

An engineer selected by the Tribe was reviewing the remedial action plan prepared by the defendants for permanent site protection and was scheduled to provide a final report to the Tribe and the defendants on or about March 30, 2001. (*Id.*) The Tribe filed a separate report with the Court indicating there were some unresolved issues regarding the engineer's services. (*See* Report to the Court, Doc. 45, March 5, 2001). In an October 3, 2001 affidavit, Thomas Curran, the operations manager for the Fort Randall Project, U.S. Army Corps of Engineers, stated that the contract with the Tribe's proposed engineering consultant was cancelled due to lack of response from the consultant. (Doc. 65.) During a meeting between the parties on July 31, 2001, the parties agreed that the defendant would contact an engineering firm in Mitchell to review the permanent site protection alternatives. (*Id.*) Randy Behm, the Cultural Resources Project Manager for the Corps, is responsible for coordinating and executing a contract with the engineering consultant and it was expected that he would execute that contract in early October 2001. (*Id.*)

Defendants filed a motion to dismiss the original complaint, or in the alternative, motion for summary judgment. (Doc. 53.) The original complaint should be dismissed, contend defendants, because all of the statutory requirements of NAGPRA relating to the inadvertent discovery of human remains at the St. Philip's Cemetery in December 1999 have been satisfied. Defendants maintain that the NAGPRA requirements of notification, certification, and cessation of activity for thirty days were satisfied. The final NAGPRA requirement of taking reasonable efforts to protect the remains before resuming activity was satisfied, according to defendants, when the parties collaboratively removed all of the loose and scattered remains at the St. Philip's Cemetery between January

10, 2000 and February 17, 2000. In compliance with the Court's preliminary injunction issued on January 10, 2000, the defendants did not raise the water levels of the Lake until after all of the loose and scattered remains that had been discovered had been removed from the lakeshore.

In support of their motion to dismiss defendants argue that the Tribe no longer has standing to pursue this action and that there is no longer a case or controversy. Defendants assert that all of the relief available under NAGPRA has been granted to the Tribe and fulfilled by the defendants. Although the Tribe argues a case or controversy exists because a permanent solution has not been developed to ensure the protection of any remains exposed in the future, the defendants maintain that the Court does not have the authority under NAGPRA to address long-term protection of remains that may be exposed in the future.

The Tribe contends that neither the removal of the loose and scattered remains in February 2000, nor the temporary solution for covering the remains in place renders the continuing injury moot for purposes of judicial review. Rather, the Tribe asserts that continued exposure of the ancestors located at St. Philip's Cemetery is an event capable of repetition, yet evading review. Thus, the Tribe maintains that it has standing in this action and there is a live case or controversy under NAGPRA. The Tribe asserts that defendants are required to provide permanent site protection pursuant to their NAGPRA obligation to make a reasonable effort to protect the discovered remains before resuming activity.

The Court granted the Tribe's request to file an amended complaint in October 2000. The amended complaint was served on the defendants in September 2001. (See Certificate of Service, Doc. 58.) The amended complaint contains the same allegations under NAGPRA as the original complaint and adds a claim for a writ of mandamus, injunctive relief and attorneys fees under the NHPA. The new claim under the NHPA is stated in paragraphs 35 through 54 of the amended complaint. The Tribe contends that (1) the Corps has violated its duty under the NHPA to preserve the human remains at the St. Philip's Cemetery because the cemetery is eligible to be listed on the National Register under the NHPA; (2) the Corps has violated its duty to consult with the Tribe in its preservation related activities at the St. Philip's Cemetery; (3) the Corps is required to allow the Advisory Council on Historic Preservation a reasonable opportunity to comment with regard to any undertaking that will affect the St. Philip's Cemetery; (4) the Corps has violated its preservation duties by managing the waters in the Lake in a manner that has eroded the ground around graves, exposing caskets, human remains and resulted in exposure and removal of artifacts. (See Amended Complaint, Doc. 56, ¶¶ 35–51.) The Tribe seeks mandamus and injunctive relief under the NHPA to (1) direct the Corps to comply with section 110 of the NHPA by requiring the Corps to preserve the St. Philip's Cemetery; and (2) require the Corps to consult with the Tribe to preserve and protect the St. Philip's Cemetery. In paragraphs 4 and 6 of the prayer for relief, the Tribe requests that the Corps be ordered to protect all remains and artifacts at the St. Philip's Cemetery. The Tribe also seeks a writ of mandamus "ordering the Corps to remove all further graves and remains from the White Swan gravesite [i.e., the St. Philip's Cemetery] as soon as the lake can be practicably drawn down sufficiently, but no later than January 1, 2001." (Doc. 56, ¶ 5.) This requested relief is inconsistent with the Tribe's position in the responses to defendants' motions to dismiss, wherein the

Tribe requests that the Corps be ordered to leave the remains at the St. Philip's Cemetery in their place and permanently protect them from erosion by the Lake.

The amended complaint contains allegations regarding six additional prehistoric sites on or near the Lake that the Tribe alleges are eroded by the management of the waters in the Lake. The Court previously bifurcated the claims regarding the six additional sites from the claim regarding burials in the vicinity of the old St. Philip's Cemetery. (*See* Order, Doc. 38, October 23, 2000.)

In their motion to dismiss the amended complaint regarding the NHPA claim, defendants contend that (1) the United States did not waive it sovereign immunity under the NHPA so there is no private cause of action under the NHPA; (2) there has been no final agency action as required by the Administrative Procedures Act giving rise to a cause of action under the NHPA; (3) even if there is a private cause of action under the NHPA, the Tribe's claim is not ripe for review; and (4) there is no case or controversy and the Tribe lacks standing to bring its claim under Article III, Section 2 of the United States Constitution.

## DECISION

█ Contending that the Court lacks jurisdiction over the subject matter of this action, the defendants move to dismiss all of the Tribe's claims pursuant to Federal Rule of Civil Procedure 12(b)(1). Both sides have presented materials, including affidavits, outside the pleadings in support of their respective positions on the motions to dismiss. The Court may consider matters outside the pleadings when considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction without converting the defendants' motions to motions for summary judgment. *See Deu-*

*ser v. Vecera,* 139 F.3d 1190, 1191, n. 3 (8th Cir.1998).

█ A federal court must have subject matter jurisdiction at the time it considers issuing injunctive relief, because " '[f]ederal courts are courts of limited jurisdiction and can only hear actual "cases or controversies" as defined under Article III of the Constitution.' " *Hickman v. Missouri,* 144 F.3d 1141, 1142 (8th Cir.1998) (quoting *Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169, 1172 (8th Cir. 1994)). " 'When a case . . . no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it.' " *Id.* To satisfy the case or controversy requirement, the Tribe must establish it has standing to pursue this action. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that the party invoking federal jurisdiction carries the burden of demonstrating the elements of the doctrine of standing). The three elements of standing are that plaintiff show (1) he has suffered an injury in fact—"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical;" ' " (2) there is "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court;' " and (3) that it is " 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Id.* (citations omitted).

### I. NAGPRA

NAGPRA governs the inadvertent discovery of Native American cultural items on federal or tribal lands. In pertinent part, NAGPRA provides:

Any person who knows, or has reason to know, that such person has discovered Native American cultural items on Federal or tribal lands after November 16, 1990, shall notify, in writing, the Secretary of the [Interior], or head of any other agency or instrumentality of the United States, having primary management authority with respect to Federal lands and the appropriate Indian tribe ... with respect to tribal lands, if known or readily ascertainable .... If the discovery occurred in connection with an activity, including (but not limited to) construction, mining, logging, and agriculture, the person shall cease the activity in the area of the discovery, make a reasonable effort to protect the items discovered before resuming this activity, and provide notice under this subsection. Following the notification under this subsection, and upon certification by the Secretary of the department or the head of any agency or instrumentality of the United States or the appropriate Indian tribe ... that notification has been received, the activity may resume within 30 days of such certification.

25 U.S.C. § 3002(d)(1). Native American cultural items that are inadvertently discovered are subject to the "ownership and control" provisions of 25 U.S.C. § 3002(a).

As the inadvertent discoverer of remains protected by § 3002(d), the Corps has three duties. First, the Corps must meet certain notification and certification requirements, which the Court previously found the Corps has satisfied at least relating to the Tribe. (See Doc. 16, p. 15–17.) Second, the Corps must refrain from raising and lowering the water levels of the Lake over the St. Philip's Cemetery for at least thirty days from the date of certification. The Corps satisfied its second duty by complying with the Court's temporary restraining order and preliminary injunction issued in December 1999 and January 2000. Third, as the discover-

er of the remains, the Corps has a duty to make "a reasonable effort to protect them." The Corps contends it has satisfied its third duty. The Tribe, on the other hand, asserts that the Corps has not satisfied this duty.

In addition to the duties imposed by § 3002(d) upon the discoverer of Native American cultural items, the regulations implementing § 3002(d) impose six additional obligations on responsible federal agency officials who receive notification that Native American cultural remains have been inadvertently discovered on federal lands. See 43 C.F.R. § 10.4(d)(1). In this case, the Corps is the federal agency with primary management authority over the land on which the human remains were discovered. Thus, the regulations provide that the Corps must, within three working days from notification: (1) certify receipt of the notification; (2) take "immediate steps, if necessary, to further secure and protect inadvertently discovered human remains ... including, as appropriate, stabilization or covering;" (3) notify Indian tribes which might be entitled to ownership or control of the cultural items under NAGPRA; (4) initiate consultation on the inadvertent discovery pursuant to 43 C.F.R. § 10.5 (governing consultation with Indian tribes); (5) follow the provisions of 43 C.F.R. § 10.3(b) (governing intentional excavation or removal) if the cultural items must be excavated or removed; and (6) ensure that the disposition of the cultural items is carried out following 43 C.F.R. § 10.6 (governing custody of Native American cultural items). 43 C.F.R. § 10.4(d)(1).

The motion to dismiss the Tribe's NAGPRA claim is based upon the Corp's contentions that (1) there is a lack of jurisdiction over the subject matter under Rule 12(b)(1); (2) the Tribe lacks standing to bring its claims under Article III, Section

2 of the United States Constitution; and (3) there is no remaining case or controversy under NAGPRA, Article III, Section 2 of the United States Constitution. The essence of the Corps' position is that this case no longer presents a live case or controversy because it has satisfied all of its duties under NAGPRA and the Tribe has received all of the relief available to it under NAGPRA.

For purposes of the motion to dismiss, the Court assumes the exposed bones at the St. Philip's Cemetery are remains of deceased Native Americans, which are "human remains" within the meaning of NAGPRA. Such bones clearly fall within the regulations' definition of human remains as "the physical remains of a person of Native American ancestry ... [excluding] remains or portions of remains that may reasonably be determined to have been freely given or naturally shed by the individual from whose body they were obtained, such as hair made into rope or nets." 43 C.F.R. § 10.2(d)(1).

The Court previously ruled that the defendants' re-observation of the cemetery site in 1999 constitutes an inadvertent discovery of human remains. (*See* Doc. 16.) The regulations define an inadvertent discovery as "the unanticipated encounter or detection of human remains, funerary objects, sacred objects, or objects of cultural patrimony found under or on the surface of Federal or tribal lands." 43 C.F.R. § 10.2(g)(4). Further, the Court held that § 3002(d) and its regulations apply to the Corps' discovery [3] and that the Corps' regulation of the Lake's water level, and its consequent effect upon the lakeshore, is an "activity" under § 3002(d). (*See* Doc. 16.)

█ The Court finds that the Tribe has standing to pursue its claim under NAG-

PRA and that there is a live case or controversy in this action. It is clear from the record in this action that the Corps has satisfied its duty to protect the loose and scattered remains which were discovered at the St. Philip's Cemetery, because those remains were removed from the site and reburied in January and February 2000. It is not clear, however, that the Corps has satisfied its duty imposed by 43 C.F.R. § 10.4(d)(ii) to secure and protect the remains that were embedded in the frozen soil, but known to the Corps in December 1999. The Tribe has alleged an injury in fact, because the remains embedded in frozen soil, which were inadvertently discovered in December 1999, were not removed and reburied and the record at this point supports the Tribe's contention that some of the embedded remains continue to exist and are exposed at the St. Philip's Cemetery when the Lake's waters do not cover the cemetery. The Corps contends that there is no existing injury because the parties have agreed to leave all known remains in place, rather than remove and rebury the remains. The Tribe points out, however, that while it wishes to leave all known remains in place, the parties agreed in November 2000 to cover the remains as temporary protection until a permanent solution could be developed. There is nothing in the record to establish that the parties' agreement to temporarily cover the embedded remains has been executed to protect the known remains. Without protection, the remains continue to be subject to being exposed, scattered, desecrated in a variety of ways and washed downstream. This is sufficient to find an injury in fact for purposes of the standing inquiry.

---

**3.** The Corps concedes that it and its employees are "persons" within the meaning of § 3002(d), *see* 43 C.F.R. § 10.2(a)(5) (defining "person"), and that the cemetery is located on federal land, *see* 25 U.S.C. § 3001(5) (defining "federal lands").

The causal connection requirement of standing is present in this case. The Corps was the federal agency that inadvertently discovered the remains at issue and it is the Corps' responsibility to comply with NAGPRA and its implementing regulations in this situation.

Finally, the third requirement of standing is satisfied in this case. The Court has the authority to require the Corps to comply with its duties under NAGPRA and its implementing regulations by issuing a writ of mandamus under 28 U.S.C. § 1361. *See Borntrager v. Stevas*, 772 F.2d 419, 420 (8th Cir.), *cert. denied*, 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985) (holding that "mandamus may issue against an officer of the United States only when the plaintiff has a clear right to relief, the defendant has a clear duty to perform the act in question, and the plaintiff has no adequate alternative remedy."). The Corps argues that the plaintiffs have received all of the relief they may obtain under NAGPRA and, thus, a favorable judgment in this action will not likely redress the Tribe's alleged injury. The essence of the Corps' argument is that its cessation of activity in accordance with the Court's temporary restraining order and preliminary injunction and removal of the loose and scattered remains in January and February 2000 relieved it of all duties under NAGPRA and its implementing regulations. Contrary to the Corps' argument, neither NAGPRA nor its implementing regulations relieve the Corps of its duty to secure and protect inadvertently discovered human remains upon the lapse of the thirty-day cessation-of-activity period. *See* 25 U.S.C. § 3002; 43 C.F.R. § 10.4. In addition to the cessation of activity requirement imposed upon the discoverer of remains by 25 U.S.C. § 3002(d) and 43 C.F.R. § 10.4(c), the Corps has the additional duty under 43 C.F.R. § 10.4(d)(ii) to "[t]ake immediate steps, if necessary, to further secure and protect inadvertently discovered human remains, funerary objects, sacred objects, or objects of cultural patrimony, including, as appropriate, stabilization or covering." 43 C.F.R. § 10.4(d)(ii). This regulation does not specify a time period within which the Corps is relieved of its duty to secure and protect inadvertently discovered human remains. At least for purposes of the standing inquiry on the Corps' motion to dismiss, the Court concludes that it is likely that the Tribe's injury will be redressed by a favorable decision in this action.

The Court concludes that the Tribe has standing to pursue its claim for injunctive relief under NAGPRA and that this case presents an Article III case or controversy. Thus, defendants' Motion to Dismiss the original complaint, Doc. 53, will be denied.

## II. NHPA

The amended complaint adds a claim for injunctive relief under the NHPA. Before a federal agency may authorize the expenditure of any federal funds on an "undertaking" and prior to the issuance of any licence, the agency must "take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register." 16 U.S.C. § 470f. The agency must allow the Advisory Council on Historic Preservation ("Advisory Council"), established under the NHPA, a reasonable opportunity to comment on the undertaking. *Id.* The NHPA also requires a federal agency to develop a preservation program to ensure that historic properties under the agency's control are identified, evaluated and nominated to the National Register of Historic Places ("National Register"), and that properties listed or eligible for listing on the National Register are managed and maintained in a way that considers the

preservation of their historic, archaeological, architectural and cultural values. *See* 16 U.S.C. § 470h–2(a). In addition, a federal agency must carry out its preservation-related activities in consultation with other federal, state and local agencies, Indian Tribes and the private sector. *Id.* The NHPA further requires the federal agency to provide a process to identify and evaluate historic properties for listing in the National Register and to provide a process to develop and implement agreements, by consulting with State Historic Preservation Officers ("SHPO's"), local governments, Indian tribes and the interested public, regarding the means by which adverse effects on such properties will be considered. *Id.* The federal agency must also comply with NAGPRA's requirements regarding the disposition of Native American cultural items from Federal or tribal land. *See* 16 U.S.C. § 470h–2(a)(2)(E)(iii) (requiring compliance with 25 U.S.C. § 3002(c)).

The Tribe's NHPA claims stated in the amended complaint are that the Corps has not given the Advisory Council a reasonable opportunity to comment regarding its activity at the St. Philip's Cemetery and the Corps has failed to perform its preservation duties, including consulting with the Tribe, imposed by the NHPA. The duty to afford the Advisory Council a reasonable opportunity to comment on an undertaking is provided in 16 U.S.C. § 470f. The NHPA preservation duties the Tribe contends the Corps has violated are stated in 16 U.S.C. § 470h–2(a).

The grounds asserted by the defendants in their motion to dismiss the NHPA claims are that there is no private right of action under the NHPA; there has been no final agency action; the claims are not ripe for review; and, the Tribe lacks standing to bring the NHPA claims.

In support of the motion to dismiss, the defendants submitted a written Cultural Resource Management Plan ("CRMP"), dated August 30, 1984, which is represented as the Corps' current cultural resource program for historic properties on all of the Missouri River mainstem reservoirs under its management in compliance with the NHPA. (*See* Declaration of Sandra Barnum, Doc. 63, Exhibit 1.) The CRMP establishes a program to identify, evaluate and protect historic properties on reservoirs, including the Lake, and it includes a process for nominating eligible sites for the National Register. (*Id.*) The Corps is currently in the process of revising the CRMP and there will be a separate cultural resource program for the Lake. (*Id.*, Doc. 63 at ¶¶ 3 and 4.) Before the CRMP for the Lake is finalized, the Corps will afford the opportunity to comment on the plan to the SHPO, the Advisory Council, any interested tribes and the interested public. (*Id.* ¶ 4.)

In addition to the CRMP, the defendants submitted a 1993 Programmatic Agreement ("PA") signed by the Corps, the Advisory Council and the SHPO's of Montana, North Dakota, South Dakota and Nebraska regarding the effects of operation and management of the six Missouri River mainstem reservoirs, which includes the Fort Randall Dam and the Lake. (*See* Doc. 63, Exhibit 2.) The purpose of the PA was to demonstrate that the Advisory Council and the relevant SHPO's agreed with the Corps' plan to manage the reservoirs and that the PA satisfied the Corps' responsibilities under the NHPA for all aspects of managing the reservoirs. The PA also explicitly states that the execution and implementation of the PA evidenced that the Corps afforded the Advisory Council a reasonable opportunity to comment on the effects on historic properties of the Corps' administration of the Missouri River Main Stem Reservoir projects, as required by 16 U.S.C. § 470f.

The Tribe first claimed that the Corps was not complying with its asserted preservation and consultation duties under the NHPA in a letter to the Corp dated January 27, 2000. In the January 27, 2000 letter, the Tribe stated that it was concerned the Corps was not complying with the NHPA by failing to consult with the Tribe and failing to take measures to protect the St. Philip's Cemetery as required by 16 U.S.C. § 470h-2. (*See* Doc. 63, Exhibit 8.) The Tribe further expressed its concern that the Corps was not complying with the 1993 PA. (*Id.*) The Tribe demanded that the Corps immediately comply with the consultation requirements of 16 U.S.C. § 470f and its responsibilities under 16 U.S.C. § 470h-2. (*Id.*) A meeting of all interested parties was requested by the Tribe. (*Id.*) Nothing in the record demonstrates that such a meeting occurred.

The record in this action does not contain a letter from the Corps in response to the Tribe's January 27, 2000 letter. The Corps, however, sent a letter dated February 1, 2000 to the Tribe as well as several other parties informing all recipients that the Corps had made an initial determination that the St. Philip's Cemetery was not eligible for listing on the National Register. (*See* Doc. 63, Exhibit 7.) The Corps sent the letter to the South Dakota SHPO, the Advisory Council and seven area tribes, including the Tribe, the South Dakota State Archaeologist, and the Bureau of Indian Affairs. (*Id.*) That letter explained the reasons for the Corps' initial determination that the St. Philip's Cemetery was not eligible for listing on the National Register and requested concurrence from the recipients of the letter. (*Id.*)

On March 6, 2000, the South Dakota SHPO sent a letter to the Corps stating that it did not have sufficient information to concur with the Corps determination that the St. Philips Cemetery was not eligible for listing on the National Register. (*See* Doc. 63, Exhibit 9.) The Corps supplied the requested information to the South Dakota SHPO in June 2000. (Doc. 3, Exhibit 10.) The South Dakota SHPO then requested site forms from the Corps by letter dated June 30, 2000. (Doc. 63, Ex.12.) The Corps does not have site forms for the St. Philip's Cemetery and was attempting to supply those in the fall of 2001. (Doc. 63, ¶ 10.) There is nothing in the record to indicate whether the South Dakota SHPO has concurred with the Corps determination that the St. Philips Cemetery is not eligible for listing on the National Register.

Not having received a response from the Tribe to its February 1, 2000 letter, the Corps sent a second letter to the Tribe dated June 2, 2000, explaining the reasons for its eligibility decision and requested a letter of agreement or disagreement from the Tribe within 20 days. (Doc. 63, Exhibit 11.) The Tribe responded by letter dated July 11, 2000, sharply disagreeing with the Corps' eligibility determination. (Doc. 63, Exhibit 13.) But the Tribe did not supply any information in the letter to support its conclusion that the St. Philip's Cemetery is eligible for listing on the National Register. (*Id.*) The Tribe did not address any of the criteria for eligibility or present any substantive arguments on how the St. Philip's Cemetery satisfies those criteria. (*Id.*)

The Advisory Council informed the Corps by letter dated July 17, 2000, that it voted to terminate the 1993 PA. The reason cited for terminating the PA was that the Corps' handling of the situation at the St. Philip's Cemetery served "to illustrate the degree to which the [Corps] has disregarded commitments it made in the PA and the resulting consequences this has had for irreplaceable resources under its care. The Council is forced to conclude

that the Corps is unable, or unwilling to carry out the terms of the PA." (*See* Doc. 63, Exhibit 3.) By terminating the PA, the Advisory Council informed the Corps that it believed the Corps was required to comply with 36 C.F.R. § 800, Subpart B, for all individual undertakings previously covered by the PA.

The Corps sent a letter dated September 6, 2000 to the Advisory Council in response to the July 17, 2000 letter, stating that the Corps' initial decision was that the St. Philip's Cemetery was not eligible for listing on the National Register, but that the eligibility status was "unresolved" at that time. (*See* Doc. 63, Exhibit 4.) In the July 17, 2000 letter, the Corps recognized that the Advisory Council could "withdraw" from the PA, but informed the Advisory Council that pursuant to the PA a 90–day discussion period was to follow any formal withdrawal. (*Id.*) The Corps offered to work with the Advisory Council to resolve the dispute during the 90–day discussion period. (*Id.*)

The last communication between the Advisory Council and the Corps contained in the record in this action is the letter from the Corps dated September 6, 2000, recognizing that the Advisory Council could withdraw from the PA. The record does not establish whether the Advisory Council formally withdrew from the PA, or whether a subsequent agreement was reached between the Corps and the Advisory Council. Thus, it is not clear from the record whether the PA is still in effect or whether the Corps and the Advisory Council have reached a compromise to allow the Council to comment.

### A. Private Cause of Action

The defendants contend that a private cause of action does not exist under the NHPA. In support of this argument, the defendants cite *National Trust for Historic Preservation v. Blanck*, 938 F.Supp. 908 (D.D.C.1996), *aff'd*, 203 F.3d 53 (D.C.Cir. 1999), which held that the NHPA does not create a private right of action against the government. The *Blanck* court held that the Army's decision at issue in that case could be reviewed under the arbitrary and capricious standard of the Administrative Procedure Act, 5 U.S.C. § 706. 938 F.Supp. at 915–16.

The Tribe contends that Congress clearly intended to create a private right of action under NHPA pursuant to 16 U.S.C. § 470w–4, which provides:

> In any civil action brought in any United States district court by any interested person to enforce the provisions of this subchapter, if such person substantially prevails in such action, the court may award attorneys' fees, expert witness fees, and other costs of participating in such action, as the court deems reasonable.

16 U.S.C. § 470w–4. In support of its argument that a private right of action exists, the Tribe cites to decisions from the Second, Third, Fourth, Fifth and Ninth Circuit Courts of Appeals where private individuals and groups sought injunctive relief against a federal agency under the NHPA. *See Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1017 (3d Cir.1991); *Presidio Golf Club v. National Park Service*, 155 F.3d 1153 (9th Cir.1998); *Vieux Carre Property Owners, Residents & Assocs. v. Brown*, 875 F.2d 453 (5th Cir.1989) (subsequent history omitted); *National Center for Preservation Law v. Landrieu*, 635 F.2d 324 (4th Cir.1980) (per curiam); *WATCH v. Harris*, 603 F.2d 310 (2d Cir.), *cert. denied*, 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979).

The Eighth Circuit implicitly recognized that a private right of action exists under the NHPA in *Ringsred v. City of Duluth*, 828 F.2d 1305, 1309 (8th Cir.1987). The plaintiff in *Ringsred* was an individual seeking to prevent the construction of a

parking ramp in downtown Duluth, Minnesota, until the effects of the project on the environment and on historic properties were more formally considered. *Id.* at 1306. The Eighth Circuit concluded that plaintiff's claim was outside the scope of the NHPA because the project plaintiff sought to enjoin was not an "undertaking" pursuant to 16 U.S.C. § 470f. *See id.* Thus, although the plaintiff's NHPA claim lacked merit, the Eighth Circuit did not find a jurisdictional bar to a private right of action under the NHPA. *See id.*

■ The authority cited by the Tribe is more persuasive than *Blanck*, 938 F.Supp. at 915 on the issue of whether a private right of action exists under the NHPA for an individual seeking injunctive relief against a federal agency. Moreover, the Eighth Circuit implicitly recognized that a private right of action exists under the NHPA. *See Ringsred*, 828 F.2d at 1309. The Court finds that a private right of action exists under the NHPA and that the Tribe may seek injunctive relief against the Corps.

### B. Final Agency Action

The Corps contends that because there is no private right of action under the NHPA, the Tribe can only seek judicial review under the Administrative Procedures Act. This argument is moot in light of the Court's finding above that a private right of action does exist under the NHPA and that the Tribe may seek injunctive relief against the Corps pursuant to the NHPA.

### C. Ripeness of NHPA Claim

■ The test for determining whether a claim is ripe for review was set forth by the Supreme Court in *Abbott Laborato-*

*ries v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)): whether the issue is fit for judicial decision, and second, whether withholding court consideration would result in hardship to the parties. The first factor contains two elements, whether the issue presented is a legal one, and whether the agency action in question is final within the meaning of the APA, 5 U.S.C. § 704. *See id.* at 149, 87 S.Ct. 1507. Citing *Abbott*, the Eighth Circuit set forth four factors that the Court is to consider in determining whether a claim is ripe for judicial review in the administrative context: "(1) the issues presented are purely legal, (2) the issues are based on final agency action, (3) the controversy has a direct and immediate impact on the plaintiff's business, and (4) the litigation is calculated to expedite final resolution rather than delay or impede effective agency enforcement." *Lane v. United States Department of Agriculture*, 187 F.3d 793 (8th Cir.1999).

Asserting that it is in the midst of its compliance with 16 U.S.C. § 470h–2 by revising the CRMP for the Lake, the Corps contends that the Tribe's claim under the NHPA is not ripe for review. To the contrary, the Tribe contends its NHPA claim is ripe and should not be dismissed. The Tribe asserts that the Court has the authority under the NHPA to issue restraining orders, injunctions and writs of mandamus against the defendants, requiring the defendants to preserve, protect, stabilize, maintain and properly manage the St. Philip's Cemetery. It appears the Tribe contends this authority is derived from 16 U.S.C. §§ 470h–2(a)(1) and 470w(8) [4].

---

4. Section 470w(8) provides that:
"Preservation" or "historic preservation" includes identification, evaluation, recordation, documentation, curation, acquisition, protection, management, rehabilitation, restoration, stabilization, maintenance, research, interpretation, conservation, and education and training regarding the fore-

The Tribe's two claims under the NHPA will be evaluated separately to determine if they are ripe for review. The first claim is that the Corps has not complied with 16 U.S.C. § 470f, which states in relevant part:

> The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State ... shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that *is included in or eligible for inclusion in the National Register.* The head of any such Federal agency shall afford the Advisory Council on Historic Preservation ... a reasonable opportunity to comment with regard to such undertaking.

16 U.S.C. § 470f (emphasis added). The plain meaning of this statute is that the duty to allow the Advisory Council an opportunity to comment on an undertaking does not arise unless the property on which the undertaking will occur is "included in or eligible for inclusion in the National Register." *Id.*

Although the Corps made an initial determination, the Corps has not made a final decision on whether the St. Philip's Cemetery is "eligible for inclusion in the National Register." *Id.* The Corps has given several entities, including the Tribe, the opportunity to present evidence and arguments in support of the position that the cemetery is eligible for listing on the National Register. The Corps identified and analyzed the criteria in written communication to the Tribe on at least two occasions and sought the Tribe's concurrence with the eligibility determination. In response to the Corp's written commu-

nication, the Tribe summarily informed the Corps that it disagrees with the Corps' initial eligibility determination. The record does not establish, however, that the Tribe has supplied the Corps with evidence or substantive arguments regarding the cemetery's eligibility. The South Dakota SHPO is in the process of determining whether it will concur with the Corps' eligibility determination. In summary, the record establishes that the Corps has made an initial determination that the St. Philip's Cemetery is not eligible for listing on the National Register, but that determination is not final.

■ Upon considering the ripeness test set forth in *Abbott,* 387 U.S. at 149, 87 S.Ct. 1507, and in *Lane,* 187 F.3d at 795, the Court finds the Tribe's NHPA claim based on 16 U.S.C. § 470f is not ripe for review. The issue of whether the St. Philip's Cemetery is eligible for listing on the National Register, which would trigger the Corps' duty to consult under 16 U.S.C. § 470f, is more a factual than a legal issue. A factual record must be established to determine whether the site meets the criteria listed in 36 C.F.R. part 63. In addition, the Corps' action is not final, as discussed above, because the Corps has not made a final determination that the St. Philip's Cemetery is not eligible for inclusion on the National Register. Moreover, the Tribe has not pursued its statutory right to appeal to the Secretary of the Interior the Corps' failure to nominate the St. Philip's Cemetery for inclusion on the National Register. *See* 16 U.S.C. § 470a(a)(5) (providing that any person may appeal to the Secretary of the Interior a nominating authority's refusal to nominate a property for listing on the National Register). Ultimately, the Secretary of the Interior has the responsibility for determining whether a property is included on

going activities, or any combination of the foregoing activities.

the National Register, and the Secretary has not been given the opportunity to decide whether the St. Philip's Cemetery meets the eligibility criteria. *See* 16 U.S.C. § 470a. Thus, the first two factors in the ripeness test are not satisfied in this case.

The third and fourth factors in the ripeness test enunciated by the Eighth Circuit in *Lane,* 187 F.3d at 795, are derived from the second factor set forth by the Supreme Court in *Abbott,* 387 U.S. at 152–54, 87 S.Ct. 1507. These factors are not satisfied in this case. The Tribe will not suffer hardship by the Court's dismissal of its NHPA claim under 16 U.S.C. § 470f at this juncture. The Corps has offered on at least two occasions to consider any evidence supplied by the Tribe in support of its claim that the St. Philip's Cemetery is eligible for listing on the National Register. The Tribe has the option of providing any such evidence to the Corps. If the Tribe is unsuccessful in persuading the Corps to nominate the site, the Tribe may file an appeal with the Secretary of the Interior to challenge the Corps' failure to nominate the St. Philip's Cemetery for inclusion on the National Register. *See* 16 U.S.C. § 470a(a)(5) (providing that any person may appeal to the Secretary of the Interior a nominating authority's refusal to nominate a property for listing on the National Register). If the Secretary of the Interior disagrees with the Corps' initial determination, and the St. Philip's Cemetery is listed on the National Register, the Corps will then be required to comply with the consultation duties under 16 U.S.C. § 470f.

In addition to lack of ripeness, the Tribe has failed to exhaust its administrative remedies. The record does not demonstrate that the Tribe has pursued its statutory right to an appeal of the Corps' refusal to nominate the St. Philip's Cemetery for listing on the National Register. An appeal to the Secretary of the Interior is expressly provided in 16 U.S.C. § 470a(a)(5), which states "[a]ny person or local government may appeal to the Secretary a nomination of any historic property for inclusion on the National Register and may appeal to the Secretary the failure or refusal of a nominating authority to nominate a property in accordance with this subsection." The Corps is a "nominating authority" and the Tribe has failed to appeal any decision of the Corps regarding the nomination of the St. Philip's Cemetery for inclusion on the National Register.

■ The NHPA does not *require* the Tribe to exhaust its administrative remedies prior to seeking judicial review. *See* 16 U.S.C. § 470a(a)(5). Thus, it is within the Court's discretion whether this action should be dismissed for failure to exhaust administrative remedies. *See Missouri v. Bowen,* 813 F.2d 864, 871 (8th Cir.1987); *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (superseded by statute on other grounds) (recognizing that where Congress has not mandated exhaustion of administrative remedies, "sound judicial discretion governs" the exhaustion inquiry). Explaining the exhaustion doctrine, the Eighth Circuit stated:

> The basic concept underlying the requirements of the exhaustion doctrine is that of judicial economy. Encouraging exhaustion serves to avoid premature interruption of the administrative process by allowing an agency to apply its special expertise, to discover and correct errors, and to develop a factual background on the issue in question. Moreover, requiring exhaustion discourages the "frequent and deliberate flounting of the administrative process."

*Id.* In this case, if the Tribe were allowed to pursue judicial review of the Corps' initial determination to refuse to nominate

the St. Philip's Cemetery for listing on the National Register, it would certainly create a "premature interruption of the administrative process." *Id.* The Secretary of the Interior, who has the ultimate authority to determine whether a property is listed on the National Register, has not been given the opportunity to discover or correct errors or to develop a factual background on the cemetery's eligibility. Therefore, the Court concludes that the Tribe's failure to exhaust administrative remedies in this case requires the dismissal without prejudice of its NHPA claim under 16 U.S.C. § 470f.

The Tribe's second NHPA claim is under 16 U.S.C. § 470h–2(a), which provides in relevant part:

(1) The heads of all Federal agencies shall assume responsibility for the preservation of historic properties which are owned or controlled by such agency..... Each agency shall undertake, consistent with the preservation of such properties and the mission of the agency and the professional standards established pursuant to section 470a(g) of this title, any preservation, as may be necessary to carry out this section.

(2) Each Federal agency shall establish ... in consultation with the Secretary, a preservation program for the identification, evaluation, and nomination to the National Register of Historic Places, and protection of historic properties. Such program shall ensure -

(A) that historic properties under the jurisdiction or control of the agency, are identified, evaluated, and nominated to the National Register;

(B) that such properties under the jurisdiction or control of the agency as are listed in or may be eligible for the National Register are managed and maintained in a way that considers the preservation of their historic, archaeological, architectural, and cultural values in compliance with section 470f of this title and gives special consideration to the preservation of such values in the case of properties designated as having National significance;

(C) that the preservation of properties not under the jurisdiction or control of the agency, but subject to be potentially affected by agency actions are given full consideration in planning;

(D) that the agency's preservation-related activities are carried out in consultation with other Federal, State, and local agencies, Indian tribes ... carrying out historic preservation planning activities, and with the private sector; and

(E) that the agency's procedures for compliance with section 470f of this title-

(i) are consistent with regulations issued by the Council pursuant to section 470s of this title;

(ii) provide a process for the identification and evaluation of historic properties for listing in the National Register and the development and implementation of agreements, in consultation with State Historic Preservation Officers, local governments, Indian tribes ... and the interested public, as appropriate, regarding the means by which adverse effects on such properties will be considered; and

(iii) provide for the disposition of Native American cultural items from Federal or tribal land in a manner consistent with section 3002(c) of Title 25.

16 U.S.C. § 470h–2(a). It appears from the Tribe's arguments, that it is claiming the Corps has violated its preservation duty under subsection (a)(1) and that the Corps has violated its consultation duty in

relation to preservation of the St. Philip's Cemetery under subsection (a)(2).

■ As to the Tribe's claim under subsection (a)(1), the statute does not impose on the Corps any preservation duty regarding the St. Philip's Cemetery unless it is determined that the cemetery is eligible for listing on the National Register. The Corps' preservation duties under 16 U.S.C. § 470h–2(a)(1) are for "historic properties" it owns or controls. The term "historic properties" under the NHPA is defined in 16 U.S.C. § 470w(5) as "any prehistoric or historic district, site, building, structure, or object included in, or *eligible for inclusion on the National Register*, including artifacts, records, and material remains related to such a property or resource." 16 U.S.C. § 470w(5) (emphasis added). Thus, the preservation duties in 16 U.S.C. § 470h–2(a)(1) are not triggered until it is determined that the St. Philip's Cemetery is eligible for listing on the National Register. As explained above, the issue of whether the St. Philip's Cemetery is eligible for listing on the National Register is not ripe for review and the Tribe has not exhausted its administrative remedies on this issue. Therefore, the Tribe's NHPA claim under 16 U.S.C. § 470h–2(a)(1) will be dismissed without prejudice.

■ As to the Tribe's claim under subsection (a)(2), the Corps has submitted the CRMP, which covers the Lake and the area of the St. Philip's Cemetery. The Corps is in the process of updating the CRMP and will have a specific CRMP for the Lake. The consultation duty under subsection (a)(2) relates to the preservation of historic properties that are eligible for inclusion on the National Register. Like the Tribe's other NHPA claims, the claim under 16 U.S.C. § 470h–2(a)(2) is not ripe for review and the Tribe has not exhausted its administrative remedies. Accordingly,

IT IS ORDERED:

(1) That the defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment, Doc. 53, and the defendants' Motion to Dismiss Amended Complaint, Doc. 61, are denied as to the plaintiff's claim under the Native American Grave Protection Repatriation Act, codified at 25 U.S.C. § 3001, *et seq.*, and are granted as to plaintiff's claims under the National Historic Preservation Act, codified at 16 U.S.C. § 470 *et seq.*

(2) That the plaintiff's claims under the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.*, as stated in the First Amended Complaint (Doc. 56) relating to the St. Philip's Cemetery are dismissed without prejudice because they are not ripe for judicial review and the plaintiff has failed to exhaust its administrative remedies on this claim as stated in this opinion.

(3) That the plaintiff's claims under the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.*, as stated in the First Amended Complaint (Doc. 56) relating to six additional sites, which were earlier bifurcated by the Court, are dismissed without prejudice for the same reasons that plaintiff's NHPA claims relating to the St. Philip's Cemetery are dismissed.